757 So.2d 542 (2000)
David WHITE, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-0210.
District Court of Appeal of Florida, Fourth District.
April 12, 2000.
*543 Richard L. Jorandby, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and M. Rebecca Springer, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Appellant, David White, was convicted of trafficking in cocaine and sentenced to a mandatory term of fifteen years in prison. On appeal, he raises three issues: (1) that the evidence was insufficient to support his conviction because the proof did not establish knowledge of the nature of the contraband; (2) that the trial court erred in allowing the prosecutor to cross-examine him concerning his failure to call witnesses and to comment upon his failure to call witnesses during closing argument; and (3) that the prosecutor improperly commented upon his post-arrest silence during cross-examination and closing argument. We find merit only in appellant's claim that the trial court erred in permitting the prosecutor to comment upon appellant's failure to call witnesses during cross-examination and closing argument.
At trial, Detective Wolfkill testified that he and other members of the Hollywood Police Department's narcotics unit were conducting surveillance and drug interdiction at the Amtrak station on April 23, 1998. Detective Wolfkill observed the appellant seated in the passenger side of an older model American car. He watched appellant get out the car without making contact with the driver and noticed that appellant was carrying a black bag. As the appellant walked along the platform to the ticket office, he appeared to be scanning the parking lot as he looked from side to side and back and forth. When he entered the ticket office, Detective Wolfkill followed him and stood behind him in line. Appellant gave his reservation number to the clerk and purchased a one-way ticket to South Carolina with cash.
When the detectives approached appellant and displayed their identification badges, appellant was cooperative. He complied with Detective Wolfkill's request to see his ticket. Detective Wolfkill observed, however, that appellant's hand and body were shaking and that appellant would not make eye contact with him. The detective requested permission to search appellant's bag. Appellant responded, "Yeah, go ahead." Inside appellant's suitcase, the detectives found a rectangular-shaped item wrapped in duct tape underneath some clothing. Appellant stated, "That's not mine, I'm carrying it for someone."
Detective Wolfkill testified that, although the package was opaque and no cocaine residue appeared on its exterior, his training and experience led him to believe that the package was a kilogram of cocaine. Further investigation revealed that the package contained 999.8 grams of cocaine.
At the close of the state's case-in-chief, appellant moved for a judgment of acquittal, arguing that the state had not established appellant's knowledge that he possessed cocaine. The court denied the motion. Defense counsel then informed the court that appellant intended to testify and moved in limine to prevent the state from suggesting during cross-examination that there were other witnesses whom the defense could have called. The court denied the motion and ruled that, if the appellant chose to testify and assert a defense akin to an alibi, cross-examination *544 regarding missing witnesses would be proper.
Appellant took the stand. He testified that he lived in Andrews, South Carolina and that he traveled by bus to Hollywood, Florida to visit his cousin, Theron Peterson. He brought a suitcase of clothing with him and stayed with Theron for about a week. For his return home, he made train reservations, because travel by train would be faster. He made the reservations in his name.
The night before appellant's departure, a friend of Theron's stopped by his home for a visit. While there, the friend, introduced only as "Charles," asked appellant to take a package to his girlfriend, Sheila, in South Carolina. Charles explained that Sheila would pick up the package at appellant's house. The cousin's friend described Sheila as a tall, fair-skinned, woman with braids, but gave no other information about her. Appellant testified that he accepted the package for Sheila and was not promised or given any money in exchange. When he arrived in South Carolina, appellant was to get in touch with his cousin, who would then notify Charles.
Appellant denied that he was nervous at the train station. He explained that he may have appeared to be scanning the area because he looked around when he heard an ambulance siren and again when a train whistle blew. He did not check his bag because the station in South Carolina was unmanned. He said he agreed to the officer's request to search his bag because "he had nothing to hide." When the detective removed the package and asked, "What do we have here?" he told the detective that he was carrying the package for someone in South Carolina. At that point, one of the detectives pulled out a knife, cut the package, and informed appellant that he was in "serious trouble." Appellant testified that he told the officers that the package did not belong to him but acknowledged, on cross-examination, that he did not identify the owner of the package or mention Charles or Theron to the officer.
During cross-examination, the state questioned appellant about his failure to call his cousin Theron, Charles, or Sheila as witnesses. Appellant responded that he asked Theron to testify for him at trial but that he refused because he did not want to get involved. He further testified that he did not know how to contact Charles or Sheila, because he did not know their last names, addresses or telephone numbers, and that Theron would not help him locate them. The state also asked appellant if he told the police whom the package containing cocaine belonged to when, upon discovery of the package in his suitcase, he denied that it belonged to him.
At the close of all the evidence, the defense renewed its motion for judgment of acquittal, arguing that the state had not established the essential element of appellant's knowledge that he possessed cocaine. The court denied the motion, ruling that the jury should determine the issue of knowledge. The jury found the appellant guilty of trafficking in cocaine as charged. We find no error in the trial court's denial of the motions for judgment of acquittal and conclude that the state presented sufficient evidence to support appellant's conviction for trafficking in cocaine by possession. See Rubiano v. State, 528 So.2d 1262, 1263 (Fla. 4th DCA 1988)(defendant's knowledge of specific nature of contraband could be inferred from exclusive possession of it).
Appellant's second point on appeal is that the court committed reversible error in allowing the prosecutor to comment, during cross-examination and closing argument, on appellant's failure to call his cousin, Theron, and Charles as witnesses. At a sidebar conference held during the state's cross-examination of appellant, the prosecutor sought confirmation of the court's earlier ruling permitting her to question appellant about these witnesses' *545 failure to testify at trial. The court responded:
You may ask if they made any attempt to have Theron here. Since Theron is a witness the defendant knew was a witness and since the State was unable to take the depo of the defendant, the State has no way of knowing that Theron was a witness or that Charles was a witness. So I think under Jackson, that these are witnesses solely within the knowledge of the defense and not within the knowledge of the state. And I think this comes within the exception that I cited in Jackson.
The trial judge was referring to Jackson v. State, 575 So.2d 181 (Fla.1991). In Jackson, the Florida Supreme Court restated the general rule that "[t]he state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." Id. at 188. The supreme court, however, recognized a "narrow" exception to this rule. This exception applies only if "the defendant voluntarily assumes some burden of proof by asserting the defenses of alibi, self-defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state." Id.
Our court has taken a "strict stance against comments that the defense had failed to call witnesses" in determining whether the exception applies in a given case. Thomas v. State, 726 So.2d 369, 370 (Fla. 4th DCA 1999 ). In Jackson v. State, 690 So.2d 714 (Fla. 4th DCA 1997), we found that the exception did not apply because the defendant did not assume the burden of proof by merely denying that the state had proven the essential elements of the offense. Id. at 716. There, Jackson was charged with possession of cocaine and marijuana found in an apartment during execution of a search warrant. Jackson denied ownership and control of the apartment and knowledge of the drugs' presence in the apartment. He testified that a co-worker had driven him to the apartment the night before to attend a party, and that he was still there the next morning when the police executed the warrant, only because he had been drinking heavily and passed out.
On cross-examination, the prosecutor asked Jackson whether his co-worker would have made a good witness and where he was at the time of trial. In reversing Jackson's conviction, we held that the prosecutor improperly suggested to the jury that the defendant had the burden to call witnesses to prove his innocence and that the trial court abused its discretion in denying Jackson's motion for a mistrial. We stated that Jackson's defense of lack of control and knowledge of the drugs amounted to "nothing more than a denial that the elements of the crime have been established." Id. at 716.
In Crowley v. State, 558 So.2d 529, 530 (Fla. 4th DCA 1990), we found a "serious error" was committed when the prosecutor, in closing argument, pointed out that the defendant failed to call any of the people present at the scene to corroborate the defendant's story that drugs found on the ground were not his. The prosecutor suggested that the defense had the same subpoena power as the state. He said: `[the defendant] testified these people were present at the scene, they saw what was going down, they are friends of Mr. Crowley's. But where are they?' Id. Essentially, the prosecutor argued that "the jury could bet that, if there were anybody out there that could vouch for Crowley's version of the facts, they would have been called to testify." We repeated the rule that "it is never the defendant's duty to establish his innocence," id. (citing Davis v. State, 90 So.2d 629 (Fla.1956)), and concluded that the exception to the rule did not apply to the factual scenario in Crowley. Id. at 531.
Similarly, in this case, the exception did not apply. The prosecutor, however, made closing comments, like those in Crowley, *546 that appellant failed to call witnesses to support his version of the facts, stating:
The defendant brought up his cousin. And Mr. McCray stated, of course his cousin didn't want to get involved because maybe he'd be sitting right there. Well this is the defendant's cousin. This is his blood. Charles is a friend. Just like Mr. McCray told Mr. Febonio, you got subpoenaed by the State Attorney's Office and you got subpoenaed by the court. They could have subpoenaed Charles here at the court.
Charles didn't want to get involved. This is his cousin. Charles supposedly was there the night that the defendant got the package. And based upon the defendant's own testimony, he said that when Charles gave me the package, Charles was there. Charles knows. I didn't ask aboutI'm sorry. The cousin knows. I didn't ask what was in the package. The cousin knows. Charles didn't tell me. The cousin can verify all this. They could have brought the cousin in here. This is his blood. His blood is facing a Trafficking in Cocaine charge and he could be here to help him. But he's shown not to be here.
We have consistently condemned such references to a criminal defendant's failure to call certain witnesses. In Romero v. State, 435 So.2d 318, 319 (Fla. 4th DCA 1983), we stated that these remarks impinge upon two related constitutional rights: (1) the defendant's right to remain silent which places a concomitant obligation on the state not to comment on the defendant's exercise of that right; and (2) the presumption of innocence, which places an obligation on the state to come forward with evidence sufficient to prove the defendant's guilt beyond a reasonable doubt. "Thus, a comment that indicates to the jury that the defendant has the burden of proof on any aspect of the case will constitute reversible error." Id.
In this case, appellant did not present an affirmative defense upon which he had the burden of proof. Although the trial court compared appellant's defense to an alibi, his defense actually amounted to nothing more than a general denial of knowledge. Appellant took the stand and testified about facts negating an essential element the state was required to prove, i.e., knowledge of the illicit nature of the substance in his possession. By simply denying that he had knowledge of the cocaine and describing the circumstances surrounding his possession, he did not assume any burden of proof and invoke the exception permitting "missing witness" remarks.
The state relies on Romero for the general proposition stated therein that, if a defendant takes the stand and suggests that some other individual actually perpetrated the crime or there are potential witnesses who could exonerate him, then, to that extent, the prosecuting attorney has a right to comment. Id. at 320. Romero explained that the rationale underlying this concept is that a defendant who chooses to testify places his credibility in issue. Accordingly, the state should be free to comment on his failure to call corroborating witnesses to avoid the danger of the jury being misled. Romero, however, involved a defendant's assertion of an alibi defense. It thus fell squarely within the affirmative defense exceptions delineated in Jackson. Furthermore, since our decision in Romero, the supreme court has clarified those limited circumstances wherein the state can comment upon a defendant's failure to call witnesses.
Clearly, a defendant who takes the stand to testify places his credibility in issue, just as any other witness. He subjects himself to close scrutiny by the jury and takes the risk of having his testimony torn apart by a skillful cross-examiner, who may expose certain contradictions, fallacies, and absurdities in his version of events.[1] But, because a criminal defendant is presumed innocent and the state has the burden of proving guilt on all elements of the offense, the prosecutor *547 must stop short of inquiring about witnesses the defendant failed to call to support his story. Otherwise, the jury will be led to believe that the defendant has an obligation to produce these witnesses and to prove his innocence. In this case, when the prosecutor asked appellant why he did not call Theron and Charles as witnesses, she suggested that he was obligated to call them and to prove that he did not know the package contained cocaine. In other words, the prosecutor's comments improperly led the jury to believe that the burden of proof on the element of knowledge shifted to the defendant. This conduct infringed upon appellant's right to due process. Jackson, 575 So.2d at 188.
We cannot say that the error was harmless in this case, where the circumstantial evidence relied upon by the state to prove appellant's knowledge that the package contained cocaine was not overwhelming, and the defendant offered a plausible "innocent possession" explanation. Moreover, the error was compounded when the prosecutor commented upon the nature of the missing, unheard testimony and impermissibly suggested that appellant would have placed perjured testimony before the jury had he called the missing witness, saying:
And I submit to you the reason why he's shown not to be here is because that night whether it as Charlesif it was Charles that gave the defendant that package, the cousin knew that the defendant knew that there was cocaine in that package. And that's why he didn't want to come in here and give you all some other type of story under oath.
In appellant's third point on appeal, he asserts that the trial court erred in permitting the state, during cross-examination of appellant and closing argument, to comment upon appellant's postarrest silence. We disagree and find no error on this issue. The record reveals that the prosecutor's remarks in both instances referred to appellant's failure to provide the detectives with the identity of the owner of the package or the names of persons who had knowledge of its true ownership, when, prior to the time of appellant's arrest, he voluntarily asserted that the package did not belong to him. The prosecutor's remarks were not directed to appellant's silence either during or after his arrest, but were used to impeach appellant's trial testimony concerning his voluntary pre-arrest statements, which denied ownership but omitted material, significant facts that would naturally have been asserted. See State v. Hoggins, 718 So.2d 761 (Fla.1998)(prearrest silence can be used to impeach a defendant, as long as silence was inconsistent with defendant's testimony at trial).
For the reasons stated above, we reverse the judgment of conviction and sentence and remand this cause for a new trial.
REVERSED and REMANDED.
GUNTHER and HAZOURI, JJ., concur.
NOTES
[1] In this case, for instance, the prosecutor conducted a textbook model of cross-examination. She effectively challenged appellant's claim of ignorance by pressing for details and highlighting the improbability of someone accepting a suspiciously wrapped package from a stranger to deliver to a stranger, with only vague instructions on how and when a pickup would occur.