840 So.2d 284 (2003)
Juan RIVERA, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-2697.
District Court of Appeal of Florida, Fifth District.
January 31, 2003.
Rehearing Denied March 21, 2003.
*286 James B. Gibson, Public Defender, and Brynn Newton, Assistant Public Defender, Daytona Beach, for Appellant.
Charlie Crist, Attorney General, Tallahassee, and Tammy L. Jaques, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Juan Rivera appeals his judgment and sentence for burglary of a dwelling and third-degree felony theft. We affirm.
During the trial, the only contested issue was whether the victim properly identified Rivera as the person who committed the alleged crimes. The victim testified that when she returned home to her apartment during the afternoon, she found Rivera, who did not have permission to be in her apartment, inside holding her video cassette recorder and her Super Nintendo. The victim recognized Rivera because she had previously seen him in the apartment complex. She testified that he fled when he became aware of her presence. After the police located Rivera in the apartment complex, the victim identified him as the burglar.
Rivera testified and presented the jury with a rather bizarre story. Rivera explained that on the day of the burglary, he was awakened about 1:00 p.m. by a phone call. About that time, the maintenance man knocked on his door. Rivera answered the knock. As the two men conversed in the doorway, the victim suddenly appeared and, much to Rivera's surprise and chagrin, accused him of the burglary. Shocked and angered, Rivera retreated inside his apartment. A short time later, Rivera looked out his window and saw the victim talking to several men. He left his apartment and ran toward the men, one of whom he thought was a law enforcement officer, to proclaim his innocence. Based on this version of the events, which the jury apparently did not believe, Rivera argued that the victim misidentified him as the perpetrator of the crime.
During closing argument, the prosecutor told the jury that "[i]n order for you to find him not guilty, which you have the prerogative to do, but you're going to have to essentially be saying that [the victim's] identification sucks." Rivera objected to this comment on the ground that it improperly shifted the burden of proof. The objection was overruled by the trial court. This objection is the basis for the specific issue we must resolve: whether the prosecutor's comment shifted the burden of proof to Rivera and, therefore, requires reversal and a new trial.
At the outset, we want to make it clear that we do not condone the particular language used by the prosecutor. However, it is the message, not the vernacular used by the messenger, that lies at the heart of the issue in this case.
There are legal standards by which courts should judge whether alleged improper comments made during closing argument require reversal. Closing argument is the part of the trial proceedings wherein each party is given the opportunity to summarize the evidence that has been presented to the jury regarding the issues in the case. McArthur v. State, 801 So.2d 1037 (Fla. 5th DCA 2001). Wide latitude is given the parties so that they may "advance all legitimate arguments and draw logical inferences from the evidence." Id. at 1040 (citations omitted).
Trial judges are generally accorded broad discretion in controlling the comments of the parties in closing argument to the jury and the decisions they render relative to objections directed to particular comments are reviewed pursuant *287 to the abuse of discretion standard. Id. "In order to determine whether improper remarks constitute reversible error, they should be reviewed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record." Id. (citing Brooks v. State, 762 So.2d 879 (Fla.2000); Cochran v. State, 711 So.2d 1159 (Fla. 4th DCA 1998)). Thus, a comment standing alone may be viewed as inappropriate, but when considered within the context of the entire closing argument and the record, it may be a fair comment.
In order to place the prosecutor's comment within the proper context, it is important to again emphasize that the only contested issue in this case was the victim's identification of Rivera as the person who committed the burglary. Rivera admitted in opening statement and throughout the course of the trial that a burglary occurred; he simply denied that the victim properly identified him as the person who did it.
Rivera specifically argues that the comment made by the prosecutor impermissibly shifted the burden of proof to him, pointing out that due process protections make it impermissible for the state to comment on a defendant's failure to testify or produce evidence to refute an element of the crime because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence. See Rodriguez v. State, 753 So.2d 29 (Fla.2000). While we agree with Rivera's statement of the law, we do not agree that the comment challenged by Rivera functioned as an impermissible burden-shifting comment.[1]
The court in Gore v. State, 719 So.2d 1197 (Fla.1998), explained the types of comments that may constitute improper burden-shifting:
The standard for a criminal conviction is not which side is more believable, but whether, taking all the evidence into consideration, the State has proven every essential element of the crime beyond a reasonable doubt. For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt. See Northard v. State, 675 So.2d 652, 653 (Fla. 4th DCA), review denied, 680 So.2d 424 (Fla.1996); Clewis v. State, 605 So.2d 974, 974 (Fla. 3d DCA 1992); Bass v. State, 547 So.2d 680, 682 (Fla. 1st DCA 1989). Here, the prosecutor's statement, "[i]f you believe he's lying to you, he's guilty," was nothing more than an exhortation to the jury to convict Gore if it found he did not tell the truth. Thus, it was a clearly impermissible argument. See Bass, 547 So.2d at 682; cf. Craig v. State, 510 So.2d 857, 865 (Fla.1987).
Id. at 1200-01. Other examples of comments by prosecutors that the courts have *288 held improperly shift the burden of proof include: telling the jurors that if they believed the police officers instead of the defendant, then they should find the defendant guilty;[2] informing the jurors that the defendant did not have tests performed on evidence found at the scene, such as hair and blood samples, to determine that the evidence did not come from him;[3] commenting on the failure of the defendant to call witnesses;[4] arguing that the defendant's request for a jury instruction regarding self defense is an admission by the defendant that he is guilty;[5] and misadvising the jurors that they have to believe the testimony of the defendant over that of the police officers to have a reasonable doubt.[6]
What each of these examples has in common, as the court in Gore aptly noted, is the prosecutor's invitation to convict the defendant for a specific reason other than the state's proof of the elements of the crime beyond a reasonable doubt, i.e., because the defendant failed to mount a defense by not testifying, presenting evidence to prove his or her innocence, or refuting an element of the crime. We conclude that the prosecutor's statement in the instant case can in no way be construed to be a comment on Rivera's failure to mount a defense by not testifying or presenting evidence. Rivera did present a defense and he did testify. His testimony and his defense were that, although a burglary did occur, the victim of that crime misidentified him as the person who committed it. The prosecutor simply commented on that defense and testimony by advising the jurors that they had the prerogative of finding Rivera not guilty if they believed, as Rivera argued, that the victim's identification was inaccurate and unworthy of belief. Therefore, the prosecutor's statement was not a burden-shifting comment that is improper under the case law that has addressed this issue.
Moreover, assuming solely for purposes of argument that the comment was improper, the comment would not constitute reversible error for two reasons. First, Rivera invited it. Based on notions of fundamental fairness, the doctrine of invited response allows the state to comment on the issues raised by the defendant.[7] As we have previously explained, in his opening statement and throughout the course of the entire trial, Rivera made it clear that the only contested issue was the victim's identification. Furthermore, misidentification was a central theme of defense counsel's closing argument, which exhorted the jurors that the victim's identification was unworthy of belief and that they must find the defendant not guilty. Telling the jury that to find Rivera not guilty, which they had the prerogative to do, they would have to find the victim's identification unworthy of belief is nothing *289 more than a restatement of Rivera's defense and closing argument. "A defendant is not at liberty to complain about a prosecutor's comments in closing argument when the comment is an invited response." Bell v. State, 758 So.2d 1266, 1266 (Fla. 5th DCA 2000) (citing Parker v. State, 641 So.2d 369 (Fla.1994)). Second, the error, if one is presumed, would be harmless based on the evidence and testimony presented during the trial, especially the prosecutor's effective cross-examination of Rivera which exposed many glaring inconsistencies in his testimony.
AFFIRMED.
SHARP, W., J., concurs specially, with opinion.
THOMPSON, C.J., dissents, with opinion.
SHARP, W., concurring specially.
In this case, the defendant, Rivera, was charged with burglary (breaking into the victim's apartment) and theft (taking her property). The primary evidence against him was the victim's testimony that upon returning to her apartment at mid-day, she saw her front door, which she had left locked, was cracked open a small way. She was shocked when, upon starting to enter, she came face-to-face with Rivera. He was just inside the door and had in his hands her VCR and a Super Nintendo. Her television was also on the floor beside the door. She had perhaps a second to look at him before he took off running, carrying away the VCR and Super Nintendo. She testified she recognized him as a person living in the apartment complex whom she had seen before.
She had her neighbor call the police immediately. She testified she watched Rivera run up the stairs to the second floor of the apartment complex, east of hers, and go into an apartment. She said he came out of the apartment, leaned against the railings, and began to curse her, saying she was lying.
The first policeman who responded to the call testified he arrived within five minutes of the summons from the neighbor. He said there were few people at the scene. He began talking with the victim whose apartment was on the ground floor. She described Rivera as Hispanic, wearing a black cap, red jersey, black pants. When he reappeared from the apartment, on the second-floor walkway, she pointed him out to the police officer. She testified he continued to yell at her saying he was going to kill her for getting him into trouble.
Rivera began to run directly at the policeman. Concerned for his safety, the officer told him to put his hands on the police car. The officer asked Rivera to identify himself, which he did. The victim identified Rivera as the burglar. Rivera said he had not broken into anything and he could prove it. Rivera was arrested and placed in the police car.
After a backup officer arrived, at Rivera's request, they took him back to his apartment on the second floor and searched it and its immediate surroundings. None of the items taken from the victim's apartment were found, nor was a black cap recovered. They did find a window on the south side of the victim's apartment had been broken into. The defense did not question that a burglary of the victim's apartment had occurred; only that Rivera had been misidentified as the perpetrator.
Rivera took the stand. At this point his case unraveled. He was asked why he suddenly appeared on the second floor walkway, dressed in a red shirt and black pants, to yell at the victim and accuse her of lying to the police about his having *290 burglarized her apartment. It was a long story. He had been sleeping and was awakened by the maintenance man. Still undressed he went to the door, and the victim appeared outside and accused him of robbing her apartment. He then yelled at her and called her names. Then, he said, she was with a group of guys, and two other guys walked up behind him to threaten him, so he went back inside and got dressed in the red shirt and black pants. He went back outside and yelled some more at the victim. He went inside to call friends for help. The police arrived at some point.
Most of Rivera's testimony did not make sense in terms of the other testimony given by the victim and the police. If he was undressed when he first appeared on the upper walkway from his apartment, or when the victim allegedly confronted him at his doorway, how did the victim know he later would be wearing a red shirt and black pants?
The police officer testified there were other people in the complex at the time he arrived, but none on the second level where Rivera's apartment was located. Where were the five or six persons who were threatening Rivera? Or according to Rivera, helping the victim move stuff out of her apartment?
In order for Rivera to do all the things he testified he did before the police arrived at the complex: such as talk to the manager at his door and to the victim, who climbed the stairs to reach his apartment, get dressed, get threatened by a group of men, on the second floor, yell at the victim, go back inside and call for his friends on his phone, the police response to the victim's call must have been much slower than the five minutes testified to by the police officer, or the 15 testified to by the victim.
In addition Rivera gave contradictory testimony about when and how he saw the police arrive. Was it after he hung up the phone as he first testified? Or was it while he was talking on the phone in the apartment? In either case, how could he have seen the arrival of the police car from the interior of his apartment? He also testified earlier that he saw the police and the victim pointing at him before he went back into his apartment to call his friend.
During closing argument, the prosecutor made comments concerning finding Rivera guilty if they believed the victim and disbelieved him. The prosecutor said, in closing argument:
Now it is up to you to determine, you collectively, to determine whether her testimony is credible. And if her testimony you believe is credible and reasonable, then you must find him guilty ...
This comment was not objected to. The prosecutor later said:
In order for you to find him not guilty, which you have the prerogative to do but you're going to have to essentially be saying that [the victim's] identification sucks and I'm asking you to go back there
The defense objected on the ground the prosecutor was shifting the burden of proof. The court overruled the objection.
Thereafter, the prosecutor continued:
... that her identification is not good, it's bad, you know. And you're going to have to think her testimony pretty much flush it down the toilet.
This kind of argument has clearly been held erroneous. As a practical matter, no doubt such arguments are and have been made in cases where the issue in the criminal case comes down to the credibility of witnesses' testimony against the defendant's. Yet, the Florida Supreme Court and others have instructed that it is improper *291 to suggest that guilt of a defendant turns on which person the jury believes.
In Gore v. State, 719 So.2d 1197 (Fla. 1998), the court ruled that it was error for a prosecutor to make such an argument in a capital case and that combined with other errors in the case, it constituted prejudicial error. The prosecutor in that case said:
You see, when I started with you I told you I have the burden of proof and I always have the burden of proof. But you see, now you consider all the evidence presented to you and decide whether I met not just the evidence I presented, but the evidence they presented, you see, because I'll make it really simple for you: If you believe he did not tell you the truth, that he made up a story, that's it, he's guilty of first degree murder.
* * *
It's simple and it comes down to this in simplicity: If you believe his story, he's not guilty. If you believe he's lying to you, he's guilty. It's that simple.
The defense objected on the ground it misstated the State's burden of proof because it improperly asked the jury to determine whether Gore was lying as the sole test for determining the issue of his guilt.
The Supreme Court said:
The standard for a criminal conviction is not which side is more believable, but whether, taking all the evidence into consideration the State has proven every essential element of the crime beyond a reasonable doubt. For that reason it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.
It continued:
Here the prosecutor's statement, "if you believe he's lying to you, he's guilty" was nothing more than an exhortation to the jury to convict Gore if it found he did not tell the truth. Thus it was a clearly impermissible argument.
719 So.2d at 1200.
In Clewis v. State, 605 So.2d 974 (Fla. 3d DCA 1992), the Third District Court of Appeal rendered a similar opinion in a drug case where identification of the defendant as the seller of drugs turned solely on the identification of the defendant by the only eyewitness, an undercover police officer. In that case the prosecutor said:
The defendant's testimony is not a reasonable doubt. A reasonable doubt is something you can attach reason to. You have to believe his story over the story of those police officers that saw him that night to have reasonable doubt.... You must believe that you must disbelieve the testimony of those police officers.
605 So.2d at 974.
The defense objected on the burden shifting ground, and the trial court overruled the objection.
The Clewis court said:
The test for reasonable doubt is not which side is more believable, but whether, taking all of the evidence in the case into consideration, guilt as to every essential element of the charge has been proven beyond a reasonable doubt.... The argument made by the prosecutor distorts the State's burden of proof by shifting that burden to the defense.
The court quoted United States v. Reed, 724 F.2d 677, 681 (8th Cir.1984), which held improper the prosecutor's comment that for the jury to acquit Reed: "[they] *292 must determine that Mr. Reed is telling the truth and that all [the government witnesses] are lying to you." Also in People v. Ferguson, 172 Ill.App.3d 1, 122 Ill. Dec. 266, 526 N.E.2d 525, 533 (1988), the court held improper the prosecutor's comment that "to find the defendant not guilty, ... you have to believe he told you the truth," and that all of the State's witnesses are "liars and fools."
The Third District Court of Appeal concluded that it is legally incorrect to ask the jury to decide, as the test for reasonable doubt, who is the liar as between the accused and a police officer. It stressed this was particularly egregious in that case because the trial was held in a small community where the police officer was known to one or more of the jurors.
In this case, based on that case law, I have to conclude that the prosecutor's statements were burden shifting and improper. The second set of comments that in order to find Rivera not guilty, the jury would have to find the victim's testimony "sucks" and flush it "down the toilet" exacerbates the misstatement beyond the cases quoted above. In essence the prosecutor said that the defense had to show the victim's testimony was outrageously unbelievable in order not to convict Rivera, a complete distortion of the State's burden of proof.
The next question is whether or not the prosecutor's statements in this case were prejudicial, in the sense that we cannot say beyond a reasonable doubt, the remarks played a part in the jury's decision to convict. Rodriguez v. State, 753 So.2d 29 (Fla.) cert. denied, 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000); Goodwin v. State, 751 So.2d 537 (Fla.1999), reh'g (Fla. 2000); State v. DiGuilio, 491 So.2d 1129 (Fla.1986). After reading the transcript and the totality of the prosecutor's closing argument, I do not think the remarks, although erroneous, were prejudicial in that sense. In this case, Rivera's testimony was so convoluted, self-contradictory, and strained as to be incredible. And the prosecutor took most of her time in closing argument demonstrating that fact. The balance of the testimony in the case pointed overwhelmingly to his guilt. Nevertheless, prosecutors should take care not to make burden shifting statements in their closing statements, such as the Florida Supreme Court has disapproved. In a closer case, a reversal would be in order.
THOMPSON, C.J., dissents.
I respectfully dissent. Although the facts of this case are simple and straightforward, it was error for the state to make improper closing arguments.
I concede that the appellant gave contradictory testimony while on the witness chair. I also concede that he did not testify coherently. But that is not the issue before this court. The issue is whether the state made an improper closing argument which may have tainted the verdict. Although I thoroughly agree with the cases cited in Judge Sawaya's opinion, and with the cases cited by Judge Sharp in her concurring opinion, I do not agree that the remarks of the prosecutor constituted harmless error.
The law is clear that "[t]he control of prosecutorial comments is within a trial court's discretion, and that court's ruling will not be overturned unless an abuse of discretion is shown." Durocher v. State, 596 So.2d 997, 1000 (Fla.1992). This standard of review is applicable when the defense has objected and the trial court has overruled that objection. See McArthur v. State, 801 So.2d 1037 (Fla. 5th DCA 2001). In this case, I think the trial court abused its discretion. As the Florida Supreme Court has said:
The standard for a criminal conviction is not which side is more believable, but whether, taking all the evidence into *293 consideration, the State has proven every essential element of the crime beyond a reasonable doubt. For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.
Gore v. State, 719 So.2d 1197, 1200 (Fla. 1998); see also Clewis v. State, 605 So.2d 974, 975 (Fla. 3d DCA 1992)("The test for reasonable doubt is not which side is more believable, but whether, taking all of the evidence in the case into consideration, guilt as to every essential element of the charge has been proven beyond a reasonable doubt").
The state's argument invited the jurors to find Rivera guilty merely if they believed the victim, rather than to base their judgment on the state's proving its case beyond and to the exclusion of every reasonable doubt: "If you believe her, he's guilty; if you don't and you think she made a misidentification, he's not guilty." A jury could believe that the victim correctly identified Rivera as the person she saw earlier, but decide that nonetheless the dearth of evidence corroborating her account left them without enough evidence to believe Rivera guilty of burglary and theft beyond and to the exclusion of every reasonable doubt.[1] The state's argument told the jury otherwise. The prosecutor essentially told the jury that it should render a guilty verdict if the victim correctly identified Rivera as the man she saw earlier. But the state's burden was to prove the elements of burglary and theft. Although there was evidence of the crimes in the form of the alleged victim's testimony, the state told the jury that a correct identification was sufficient to convict. Indeed, the testimony of a victim is sufficient for a conviction but only if the jury believes the victim beyond and to the exclusion of every reasonable doubt. The trial court abused its discretion in overruling the defense objection because the state's burden was to prove all of the elements of the crime, and the identification of the perpetrator, beyond a reasonable doubt.
The next question then becomes whether overruling the objection was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The evidence was particularly close here, with the only evidence against Rivera consisting of the victim's testimony.[2]Compare Clewis, 605 So.2d at 975 (where the evidence is close, an improper burden shifting closing argument is not harmless) with Riggins v. State, 757 So.2d 567 (Fla. 2d DCA 2000)(in light of strong evidence against the defendant, an improper burden shifting argument is harmless error).[3] I conclude that it cannot be said beyond a reasonable doubt that the improper argument had no effect on the verdict, and I would therefore reverse.
*294 Furthermore, this court has consistently cautioned lawyers about improper closing arguments, in both the civil and criminal contexts.[4] The cases mentioned below in footnote four were all authored by Senior Judge Warren Cobb who, during his 23year career on this court, repeatedly admonished lawyers and established this district court's intolerance for improper closing arguments. To me, it is insignificant that this case is relatively minor or that the defendant "appears" to be guilty. What is important is that the state, yet again, exceeds the bounds of propriety in its closing arguments. If lawyers are allowed to render such closings, which the majority recognizes as inappropriate, we can expect this to continue.
NOTES
[1] The courts recognize a limited exception to this rule, however, that allows the prosecutor to comment on the absence of evidence when the defendant voluntarily raises an issue that the defendant must prove. Rodriguez. For example, "asserting the defenses of alibi, selfdefense, and defense of others, or by relying on facts that could be elicited only from a witness who is not equally available to the state" may prompt the prosecutor to comment on the lack of proof directed to those issues. Otero v. State, 754 So.2d 765, 769 (Fla. 3d DCA 2000) (citing Jackson v. State, 575 So.2d 181 (Fla.1991)); Raupp v. State, 678 So.2d 1358, 1361 (Fla. 5th DCA 1996) ("Defendant did not assert the defenses of alibi, self-defense, or defense of others, and thus he could not be said to have asserted any claim whereby he carried any burden of proof. Defendant's theory of defense was simply denial that he had committed the charged offense.").
[2] See Freeman v. State, 717 So.2d 105 (Fla. 5th DCA 1998).
[3] See Hayes v. State, 660 So.2d 257 (Fla. 1995).
[4] See Raupp.
[5] See Keyes v. State, 804 So.2d 373 (Fla. 4th DCA 2001).
[6] See Clewis v. State, 605 So.2d 974 (Fla. 3d DCA 1992).
[7] See Barwick v. State, 660 So.2d 685 (Fla. 1995); Dufour v. State, 495 So.2d 154 (Fla. 1986); State v. Mathis, 278 So.2d 280, 281 (Fla.1973) ("Here the challenged remark in closing argument of the prosecutor ... was really an `invited response' by the preceding argument of defense counsel regarding the same subject. It was a fair reply not violative of the Rule and which we would approve in these circumstances."); State v. Compo, 651 So.2d 127, 130 (Fla. 2d DCA 1995) ("Fundamental notions of fairness required that the state be allowed to comment on the ... issues raised by the defendant.") (citation omitted).
[1] The majority suggests that "the only contested issue in this case was the victim's identification of Rivera as the person who committed the burglary." Although that may be the issue about which the defense chose to argue most vehemently, nowhere in the record did Rivera stipulate that a burglary and a theft occurred. The state had the burden of proving each element of the charges beyond and to the exclusion of every reasonable doubt.
[2] Prior to trial, the trial court disallowed testimony from the defense which would have shown that the victim had twice failed to return electronic equipment (similar to the allegedly stolen items heretelevision, car stereo, compact discs, amplifier) to a rental store at the end of the rental period. The defense was planning to argue that the victim had concocted this burglary to cover her own tracks.
[3] Recently, this court looked at a similar defense complaint in McArthur and held that the alleged error there was not fundamental. The instant case is different from McArthur, in that in McArthur the state's improperly vouching for one witness was not fundamental error because that witness's testimony was not the only evidence of the defendant's guilt. That is not the case here, where the victim's testimony was the only evidence against the defendant and the offending argument was objected to. Cf. Echevarria v. State, 783 So.2d 1236 (Fla. 5th DCA 2001)(holding that it is not error for the state to highlight that the victim's testimony and the defendant's testimony are irreconcilable).
[4] See Wright & Ford Millworks, Inc. v. Long, 412 So.2d 892 (Fla. 5th DCA 1982); Walt Disney World Co. v. Blalock, 640 So.2d 1156 (Fla. 5th DCA 1994); Superior Industries International v. Faulk, 695 So.2d 376 (Fla. 5th DCA 1997); Henry v. State, 743 So.2d 52 (Fla. 5th DCA 1999).