915 So.2d 1288 (2005)
Earvin EALY, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 2D04-987.
District Court of Appeal of Florida, Second District.
December 21, 2005.
*1289 James Marion Moorman, Public Defender, and Jeffrey M. Hazen, Special Assistant Public Defender, Bartow, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Anne Sheer Weiner, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Earvin Ealy, Jr., appeals his judgment and sentence for robbery and kidnapping. We reverse and remand for a new trial because the prosecutor made prejudicial comments, primarily during closing argument, suggesting that Mr. Ealy had a burden to prove his own innocence. This is a case in which the defendant chose to testify. We understand the assistant state attorney's efforts to discount that testimony during cross-examination and in closing argument. However, the fact that a defendant elects to testify in a criminal case does not shift any burden of proof to that defendant. See White v. State, 757 So.2d 542, 546-47 (Fla. 4th DCA 2000).
There is no dispute that someone robbed over $30,000 from a branch office of the Signature Bank located at 344 1st Avenue South in St. Petersburg, Florida, on October 18, 2002. The evidence connecting Mr. Ealy to this robbery was largely circumstantial and quite limited. First, the robber was identified as an African-American male who wore a mask that revealed his lips. Mr. Ealy is a black man whose lips looked similar to the robber's lips. However, one of the State's witnesses initially described the robber's skin color as being darker than Mr. Ealy's. Second, at least one witness believed the robber drove a small-size, champagne or beige-colored Cadillac. Mr. Ealy admitted that he owned a full-size, silver Cadillac. Finally, and undoubtedly most important, there were fingerprints left on the inside of the back door of the bank that the State's *1290 expert identified as Mr. Ealy's fingerprints.
This is not a case in which there were many eyewitnesses. This branch office is not a full-service bank that employs tellers. It employs only a courier and an attendant, neither of whom interact with customers. At trial, the courier testified that on the morning of the robbery he was patrolling the premises for trash when he was approached by a man wearing a black nylon stocking over his face. The man told the courier that he had a gun and instructed the courier to open the door with his key. Instead of unlocking the door, the courier knocked on the back door and called for the attendant. The attendant looked out the window, and the masked man told her to open the door or he would shoot the courier. The attendant complied, and once inside the bank, the perpetrator told the courier to lie down inside a room. The perpetrator then proceeded to rob the bank by forcing the attendant to open the cash drawers.
Because the robber had most of his face covered, neither the courier nor the attendant was able to make a positive identification. They both agreed that Mr. Ealy had similar lips and was approximately the same stature as the robber. Because the bank had no tellers, there were no other customers or bystanders to identify the robber.
Mr. Ealy was not arrested with any cash. No gun or other weapon tied him to this robbery. At the time of his arrest, he had no prior criminal record and was a twenty-two-year-old man with several jobs, making a good living. There was no obvious motive for this crime. He arrived at work late on the day of the robbery, but it was unclear that he had a required time to report to work and he claimed that he experienced car trouble that morning. Thus, the State probably proved that Mr. Ealy had the opportunity to commit this crime, but then so did many other young African-American males of his general physical description.
Given the weaknesses within this evidence, the State's case against Mr. Ealy relied heavily on the set of fingerprints taken from inside the bank that produced a positive match to Mr. Ealy. The testimony established that the first fingerprint examiner to compare Mr. Ealy's fingerprints to the prints taken from inside the bank labeled his prints "negative" for a match. Thereafter, the State apparently obtained a better set of Mr. Ealy's fingerprints. Using these prints to examine the fingerprints from the bank, both the fingerprint examiner at the St. Petersburg Police Department and her supervisor concluded that the prints were a match. The prints matched Mr. Ealy's left thumb with twenty-four points of comparison, the left ring finger with sixteen points of comparison, and the left middle finger with only eleven points.[1]
Mr. Ealy chose to testify. He testified that he lived with his fiancée and son. He was not having trouble meeting any expenses as he was earning about $40,000 per year. He owned a silver Cadillac Seville. On the morning of the robbery, he believed he was scheduled to work at 10 a.m., but was late because he got a flat tire. He denied committing the robbery.
Mr. Ealy did not elect to present an expert witness on fingerprints. He did not bring a photograph of his car to trial or bring any records to prove that he had car *1291 trouble on his way to work the morning of the robbery.
During closing argument, the prosecutor stated:
As I told you in my opening statement, he tried to be careful, tried to conceal his identity, but he couldn't, but he didn't. And you've not heard one thing from that witness stand that contradicts that those are his fingerprints there at Signature Bank.
Mr. Ealy's counsel immediately objected and moved for a mistrial, arguing that the comment impermissibly shifted the burden. The trial court denied the motion, and the prosecutor continued by again stating:
You have not heard one piece of evidence to contradict those fingerprints. You've not heard one ounce of testimony, one word even spoken from anybody during this trial from that witness stand, that even placed Earvin Ealy there at that bank even on a different day.
Mr. Ealy raised the same objection, which the trial court again denied. The prosecutor resumed and stated:
And what reason do you have that has been presented to you from this witness stand here and throughout the course of this trial do you say to yourselves, "can't possibly be his fingerprints. It's not his fingerprints?"
When a defendant testifies or presents other evidence in his case, the State clearly has the right to comment on that testimony in closing argument. See Rivera v. State, 840 So.2d 284 (Fla. 5th DCA 2003). For example, the State could probably comment on Mr. Ealy's decision to ask the jury to rely on his credibility about his car trouble and the description of his car when there were stronger ways for him to prove his claims.
On the other hand, the State had the burden to present fingerprint evidence that was sufficiently compelling to satisfy its burden before this jury. This was a case in which the State's primary fingerprint expert had initially concluded that the fingerprints found at the bank were not Mr. Ealy's. The State needed to convince the jury that its subsequent conclusion that the prints were in fact Mr. Ealy's was determined by experts that were sufficiently professional and proficient, such that the State had no burden to present another independent witness or further evidence to buttress the existing fingerprint evidence. Instead of relying on such arguments, the State repeatedly implied that Mr. Ealy had an obligation to refute the questionable fingerprint evidence.
These statements were improper because they could have misled the jury on the burden of proof. See Jackson v. State, 575 So.2d 181 (Fla.1991); Shelton v. State, 654 So.2d 1295 (Fla. 4th DCA 1995). The types of comments that may constitute improper burden shifting have one thing in common, that being
the prosecutor's invitation to convict the defendant for a specific reason other than the state's proof of the elements of the crime beyond a reasonable doubt, i.e., because the defendant failed to mount a defense by not testifying, presenting evidence to prove his or her innocence, or refuting an element of the crime.
Rivera, 840 So.2d at 288 (citing Gore v. State, 719 So.2d 1197 (Fla.1998)).
The prosecutor's comments impermissibly shifted the burden to Mr. Ealy to disprove that the fingerprints were his and suggested that his failure to do so was indicative of his guilt. The prosecutor's repetition of this suggestion three times makes this situation particularly egregious, especially because the prosecutor could *1292 have discussed the fingerprints in a way which could be considered a fair comment on the evidence without impermissibly shifting the burden of proof.
After a review of the record, we cannot conclude the error was harmless. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The fingerprint evidence was essential to the State's case because Mr. Ealy's identity was the central focus of the trial. Because the jury was told three times that Mr. Ealy failed to prove that the fingerprints were not his, it cannot be said beyond a reasonable doubt that the error did not contribute to the jury's verdict.
Mr. Ealy has also raised a vindictive sentencing issue. Mr. Ealy has always maintained his innocence. At the sentencing hearing, the trial judge offered him a reduced sentence if he would return the money from the robbery. When Mr. Ealy did not offer to return the money, the trial court sentenced him to thirty years' imprisonment, suspended after fifteen years and replaced with a term of probation. Mr. Ealy's scoresheet permitted a sentence as low as sixty-one months' imprisonment. Because we reverse the conviction, we do not have to resolve this issue. However, because it appears this argument may have merit, in an abundance of caution, we reverse this case for a new trial before a different judge. See Soto v. State, 874 So.2d 1215 (Fla. 3d DCA 2004).
Reversed and remanded with directions.
WHATLEY and DAVIS, JJ., Concur.
NOTES
[1] There was testimony that the robber was left-handed. Mr. Ealy testified that he was right-handed.