PERRY, J.,
dissenting.
With respect to my colleagues in the majority, I dissent because I do not agree that this Court has jurisdiction for discretionary review in this case. The decision in Warmington does not expressly and directly conflict with any of the cited appellate court decisions. See art. V, § (b)(3), Fla. Const. Accordingly, I would leave the. Third District’s Warmington decision undisturbed.
The reasons that I dissent are as follows. First, in Warmington, the facts and circumstances are distinguishable from those found in the decisions cited by the majority, see majority op. at 649, and negate a conclusion that there is express and direct conflict between these decisions. The record supports neither the assertion that the State invited the jury to return a guilty verdict in lieu of the State proving every element of the crime charged, nor a conclusion that the State led the jury to believe Warmington had a duty to present exculpatory evidence. Moreover, the majority ignores . that when Warmington chose to present a defense case, the State successfully refuted Warmington’s hypothesis of his innocence. Finally, the trial court’s- judgment to permit the jury to *658 consider the lead detective’s testimony did not constitute error.
There Is No Conflict of Decisions
The facts and circumstances found in this case are distinguishable from the facts and circumstances presented in the asserted conflict decisions. First, this case is not in express and direct conflict with our decision in Hayes.
In Hayes, we previously described how the State used an expert witness’ testimony to impermissibly shift its burden of proof:
[0]n redirect, the trial judge overruled a defense objection and allowed the State to inquire whether the defense had requested any testing of the blood stains. The -witness replied that the defense had not asked the crime lab to test the blood stains and added that the lab had complied with such requests in the past for other defense attorneys. Similar comments were made by the prosecutor in closing argument concerning the failure of the defense to test hairs found at the scene of the murder. We find that the prosecutor’s comments were prejudicial.
Hayes, 660 So.2d at 265. However, in this case there was no impermissible burden shifting by the State.
The record plainly shows that the State’s direct examination of Detective Abolsky about what happened during his investigation did nothing to shift the burden from the State to prove, beyond a reasonable doubt, every element of the crime. It is well established that impermissible burden shifting involves the State’s comment on the defendant’s failure to refute one or more elements of the crime. See Evans v. State, 838 So.2d 1090, 1094 (Fla.2002) (citing Jackson, 575 So.2d at 188). Furthermore, impermissible burden shifting is attributable to the State’s invitation for the jury to find guilt when the State has failed to prove every element of the offense beyond a reasonable doubt. See Gore v. State, 719 So.2d 1197, 1200 (Fla.1998) (“[I]t is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt.”); see also Ealy v. State, 915 So.2d 1288, 1291 (Fla. 2d DCA 2005) (“The types of comments that may constitute improper burden shifting have one thing in common, that being ‘the prosecutor’s invitation to convict the defendant for a specific reason other than the state’s proof of the elements of the crime beyond a reasonable doubt, i.e., because the defendant failed to mount á defense by not testifying, presenting evidence to prove his or her innocence, or refuting an element of the crime.’ ” (quoting Rivera v. State, 840 So.2d 284, 288 (Fla. 5th DCA 2003))).
During Warmington’s trial, the State fully carried its burden of proof under the requirements of Florida law. See § 812.014(1), Fla. Stat. (2002) (“A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently: (a) [djeprive the other person of a right to .the property or a benefit from the property[;j [and] (b) [ajppropriate the property to his or her own use or to the use of any person not entitled to the use of the property.”).
Specifically, there is competent, substantial evidence in this record that Warming-ton took on deposit into his personal bank account $150,000 from the Pistols, and partially used it for purposes other than a loan to Sardina to obtain a second mortgage on real property and his rent. This record reflects that the Pistols believed that their loan to Sardina, for which Warmington acted as the intermediary, was to be secured by a mortgage on real property that Sardina was attempting to *659 secure. When the State presented proof to the jury that the funds were used for purposes other than a mortgage to Sardi-na, such evidence was legally sufficient to support the guilty verdict against Warm-ington. The State presented evidence that Warmington received cashier’s checks totaling $150,000 from the Pistols, and deposited those funds into his personal bank account as part of a ruse. Warmington’s ruse was accomplished when he represented to Sardina that the Pistols decided not to lend him the money after all, even though the Pistols had in fact deposited the total funds agreed upon for Sardina’s second mortgage. The State presented evidence that Warmington, rather than Sardina, had control over and used the funds received from the Pistols. Therefore, it is clear that the State proved the elements of grand theft. See id.
Based on such evidence in the record on appeal, the Warmington majority below correctly recognized that the State did not shift any aspect of its burden of proof to the defendant. See Warmington, 86 So.3d at 1190. Accordingly, there is no apparent basis for concluding that there is express and direct conflict between the decision on review and Hayes.[2] See Hayes, 660 So.2d at 265.
Next, the present case is not in conflict with Ramirez because Warmington’s possession of mortgage loan documentation is not an element of the crime for which he was convicted. But see majority op. at 653. In Ramirez, the Fourth District stated in pertinent part that “[t]he State is not permitted to ‘comment on a defendant’s failure to produce evidence to refute an element of the crime.’ ” Ramirez, 1 So.3d at 385 (quoting Jackson, 575 So.2d at 188).
However, Detective Abolsky’s testimony about this matter was merely his effort accurately to relay historical facts stemming from Warmington’s pre-arrest verbal disclosure to the detective. The majority below made this precise point — whether Warmington possessed loan documents is not an element of the crime — pertaining to the detective’s testimony. See Warming-ton, 86 So.3d at 1191. For this reason, I conclude that the decision on review does not conflict with Ramirez, which prohibits the State from shifting its burden of proof to the defendant. See Ramirez, 1 So.3d at 386.
Similarly, there is no apparent basis for concluding that the Warmington decision on review conflicts with Miele. But see majority op. at 653. In Miele, the Second District also stated that “[i]t is not permis *660 sible for the State to comment on the defendant’s failure to present evidence refuting an element of the charged crime.” Miele, 875 So.2d at 814 (citing Jackson, 575 So.2d at 188). I agree with the observation made by the Warmington majority below: “Our case is readily distinguishable from Miele, again on the ground that Detective Abolsky was testifying as to historical fact.” Warmington, 86 So.3d at 1192. Accordingly, the decision on review is not in conflict with Miele regarding impermissible burden shifting by the State. See Miele, 875 So.2d at 814.
In summation, it is unreasonable to conclude that the State’s direct examination of Detective Abolsky constitutes the State’s impermissible comment on Warmington’s failure to refute elements of the crime. Further, it is unreasonable to conclude that the State’s prompting of the detective’s testimony at issue demonstrates that the State invited the jury to find Warming-ton guilty without first proving every element of the crime beyond a reasonable doubt.
The Impact of the Defense’s Case on the Verdict
Next, not only was there no impermissible burden shifting by the State during Warmington’s trial, there is also little doubt that Warmington’s defense case impacted the jury’s verdict. The majority neglects to acknowledge that Warmington put on a defense during his trial. Notably, without mentioning Warmington’s defense case, the majority simply states “[ajfter the close of evidence, the jury returned a verdict, finding Warmington guilty of the lesser-included crime of theft of an amount greater than $20,000 but less than $100,000.” Majority op. at 651.
However, after the State rested its case, Warmington presented a defense in which he argued that he was actually innocent of committing the charged crime. The record shows that Warmington was among the witnesses who testified for the defense about the alleged loan deal that Warming-ton discussed with Detective Abolsky prior to his arrest. Warmington testified that when he received the money directly from the Pistols and deposited it into his personal bank account he did so lawfully, while acting as an intermediary in the supposed loan transaction. During cross-examination, Warmington admitted that he used portions of funds that the Pistols deposited into his personal bank account.
After Warmington asserted that he was actually innocent, the State was required under Florida law to refute any reasonable hypothesis of his innocence — which it did, partly by way of the testimony it elicited from Warmington.[3] But see generally H.M. v. State, 802 So.2d 1185 (Fla. 3d DCÁ 2002) (“[T]he trial court should have granted the respondent’s motion for judgment of acquittal with respect to the burglary count where there was no evidence refuting his reasonable hypothesis of innocence that he was only an onlooker or mere witness to a crime.” (citing J.W. v. State, 467 So.2d 796, 797 (Fla. 3d DCA 1985))); Tomlin v. State, 333 So.2d 500, *661 501 (Fla. 2d DCA 1976) (“[T]he evidence was subject to the reasonable hypothesis of appellant’s innocence in that the marijuana [as the appellant argued] may have been in the possession of one of the persons who was renting a room in the house.” citing Harris v. State, 307 So.2d 218, 220 (Fla. 3d DCA 1974) (“We are of the opinion that the facts sub judice are supportive of reasonable hypotheses of the defendant’s innocence.... ”)).
By way of the present misapprehension that the State committed impermissible burden shifting, the State is being unduly penalized. This record supports a conclusion that because the State successfully refuted Warmington’s hypothesis of his innocence by proving every element of grand theft, the jury returned its guilty verdict. Conversely, the majority’s view that Detective Abolsky’s testimony alone may have led the jury to conclude that Warm-ington had a duty to produce exculpatory evidence is overreaching and ignores the impact Warmington’s defense had during the adversarial process en route to the jury’s guilty verdict.
The Trial Court Committed No Error
Finally, even if this Court had jurisdiction for discretionary review in this case, I respectfully disagree that the trial court’s ruling that allowed the jury to consider Detective Abolsky’s testimony constituted harmful error. To the contrary, I do not agree that the trial judge’s ruling constituted any error at all. However, even assuming arguendo that the trial judge’s ruling at issue was erroneous, in light of precedent, the trial judge’s ruling was harmless beyond a reasonable doubt because the State provided legally sufficient proof for every element of the crime for which Warmington was charged. See generally DiGuilio, 491 So.2d at 1135 (“The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” (citing Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))). The majority concludes that the State did not carry its burden as the beneficiary of the supposed error.
The prejudicial effect of the testimony elicited by the State was magnified by the fact that Detective Abolsky, a detective with the Economic Crimes Bureau who presumably possesses a strong understanding of what evidence is relevant in proving theft, testified that he arrested Warmington immediately following Warmington’s failure to produce the exculpatory documents. Indeed, after inquiring into whether Warmington could produce exculpatory documents, the State asked “[w]hen you had that conversation with Mr. Warmington, what happened?” ' Detective Abolsky responded, “I placed him under arrest.” The State then ended the direct examination.
This chronology conveyed to the jury the distinct impression that Warmington was arrested as a direct result of failing to provide Detective Abolsky with evidence proving his innocence. Given that Detective Abolsky portrayed Warming-ton’s failure to produce exculpatory documents as the reason for his arrest, it is ■ very likely that a jury could have inferred that Warmington had a duty to produce such evidence because, if Warmington did not have any such duty, the arrest would not have occurred immediately following his failure to produce the exculpatory documents.
Majority op. at 656.
I disagree with the majority’s view on this point, because such a view departs from our caution in DiGuilio that “[h]arm *662 less error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.” DiGuilio, 491 at 1139; Majority op. at 655. Here, the majority appears to substitute itself in the role of trier-of-fact by its assumption that the jury inferred that Warmington had a duty to produce exculpatory evidence. Nevertheless, there are ample grounds for drawing the opposite inference. Namely, a reasonable person could infer that the jury assumed that-Warmington had no duty to produce exculpatory evidence, in light of the trial judge’s repeated explanations to the jury that Warmington was not required to present evidence or prove anything.
Furthermore, the trial judge provided instruction concerning an out-of-court statement attributed to Warmington that was placed before the jury. Specifically, the trial court instructed the jury to carefully weigh the statement, and that it should make certain that the out-of-court statement was freely and voluntarily made. (Trial Transcript vol, VI at 910.) After the State rested, the trial court considered arguments from the parties concerning Warmington’s motion for mistrial based on Detective Abolsky’s testimony and ultimately denied it.
As the Third District aptly stated:
[W]e are not moved by the fact Warm-ington was arrested immediately after he told Detective Abolsky he did not have a copy of the mortgage documents. This again is a matter of historical fact. The testimony, taken as a whole, was prejudicial to Warmington. However, all defendants are arrested at some point, and the fact of arrest regularly makes its way into testimony at trial. The State at all times had the burden to prove the case against Warmington beyond a reasonable doubt. We do not believe this burden was lessened by Detective Abolsky’s testimony.
Warmington, 86 So.3d at 1192. Clearly, Warmington’s apparent theft of a large sum of money from the Pistols was the reason for his arrest.
The majority speculates about the impact of the detective’s testimony, asserting that “we cannot conclude, beyond a reasonable doubt, that the impermissible burden-shifting testimony did not affect the jury’s verdict.” Majority op. at 656. By such a view, I infer that the majority concludes that the trial court should have granted Warmington’s motion for mistrial based on the assertion of impermissible burden shifting. However, I see nothing in this record that shows the trial court’s ruling to deny Warmington’s motion for mistrial was erroneous.
Conclusion
Because there was no impermissible burden shifting during Warmington’s trial, there is no basis for concluding that the Third District’s decision affirming his direct appeal expressly and directly conflicts with any of the identified appellate decisions. Therefore, I would dismiss for lack of jurisdiction. Furthermore, even if this Court had jurisdiction for this present review, I cannot agree that the trial court committed any error. Accordingly, I respectfully dissent.

. The majority correctly states that Warming-ton never asserted an affirmative defense that implicated the Hayes exception. Majority op. at 654-55 (citing Hayes, 660 So.2d at 265 ("[W]e recognized an exception to the general rule that the prosecutor may not comment on the failure of the defense to call any witnesses when the defendant raises an issue for which the defense carries some burden of proof.” (citing Jackson, 575 So.2d at 188))).
We have previously explained that "[a]n affirmative defense does not concern itself with elements of the offense at all; it concedes them. In effect, an affirmative defense says, ‘Yes, I did it, but I had a good reason.’ " State v. Cohen, 568 So.2d 49, 51-52 (Fla.1990). Moreover, " ‘[a]n affirmative defense is any defense that assumes the complaint or charges to be correct but raises other facts that, if true, would establish a valid excuse or justification or a right to engage in the conduct in question.’ ” Herrera v. State, 594 So.2d 275, 277 (Fla.1992) (quoting Cohen, 568 So.2d at 51).
There is no evidence in this record that Warmington asserted any affirmative defense. He instead presented a hypothesis of his innocence. Moreover, the State did nothing to lead the jury to believe that Warmington should have asserted an affirmative defense. Therefore, I agree that the Hayes exception is not implicated in this case.

. Notably, the trial court explicitly instructed the jury about Warmington’s presumption of innocence under the law:
The defendant has entered a plea of not guilty. This means you must presume or believe the defendant is innocent. The presumption stays with the defendant as to each material allegation in the Information through each stage of the trial unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt. To overcome the defendant's presumption of innocence the State has the burden of proving: the crime with which the defendant is charged was committed and the defendant is not required to present evidence or prove anything.
(Trial Transcript vol. VI, 908, Feb. 16, 2010.)