719 So.2d 1197 (1998)
Marshall Lee GORE, Appellant,
v.
STATE of Florida, Appellee.
No. 86249.
Supreme Court of Florida.
October 1, 1998.
John H. Lipinski and Maria Brea Lipinski, Miami, and Anthony Genova, Miami, for Appellant.
Robert A. Butterworth, Attorney General, and Barbara J. Yates, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Marshall Lee Gore. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We reverse for a new trial based on the cumulative effect of the prosecutor's improper cross-examination of Gore and improper closing argument.[1]

*1198 I. FACTS
Gore was tried in 1995 for the murder of Robyn Novick, last seen alive on March 11, 1988, in the company of a white male resembling Gore. In the early morning hours of March 12, Gore was seen driving Novick's automobile, which he later wrecked and abandoned.
Four days later, on March 16, police found Novick's nude body beside the road in a rural area of Dade County used for dumping trash. She had been stabbed and strangled. The trial court allowed the State to introduce evidence of Gore's similar crimes against two victimsSusan Roark and Tina Corolis[2] for the limited purpose of establishing Gore's identity as Novick's murderer.
Gore took the stand on his own behalf. He admitted that he knew Novick and that he had been with her on the night she disappeared. He claimed that Novick loaned her automobile to him. He admitted wrecking and abandoning the automobile, but denied killing Novick.
The jury found Gore guilty of first-degree murder and armed robbery of Novick. The trial court imposed the death penalty following a unanimous jury recommendation. At the time of the Novick conviction, Gore was under sentence of death for the murder of Roark and was serving a life sentence for the rape, robbery and attempted murder of Corolis. Both sentences were affirmed on appeal. See Gore v. State, 599 So.2d 978 (Fla. 1992); Gore v. State, 573 So.2d 87 (Fla. 3d DCA 1991).
On appeal in this case, Gore raises six issues regarding the guilt phase of his trial and two issues regarding the penalty phase. Because we find it dispositive in this appeal, we address only one of the guilt phase issues: Whether the prosecutor committed reversible error during the cross-examination of Gore and during closing argument.

II. QUESTIONING ON COLLATERAL CRIMES

A. Child Abuse
Prior to trial, the State filed a notice of intent to introduce Williams[3]-rule evidence, pursuant to section 90.404(2)(b)1, Florida Statutes (1995), concerning Gore's similar crimes against Corolis and Roark. The State argued that the evidence was admissible to demonstrate a unique modus operandi establishing Gore's identity as Novick's murderer. In permitting the State to introduce evidence of those two crimes, the trial court explicitly precluded the State from introducing the details of what occurred after Gore left Tina Corolis for dead. Specifically, these details included the fact that Gore took Corolis's automobile with Corolis's two-year-old son inside and then drove the child to Georgia, where he left the child naked and locked in the pantry of a burned and abandoned house in freezing temperatures. In its pretrial ruling, the trial court found that reference to details concerning the child "would be prejudicial and outweigh[ ] any probative value."
During defense counsel's direct examination, Gore testified that he was the biological father of the child. The prosecutor, on cross-examination, questioned Gore about this assertion. Without first seeking the trial court's permission, the prosecutor proceeded to ask the following inflammatory questions:
Q. Now, let's talk about your son Jimmy for a moment, who you say is your son?
A. Yes. Tina says it too.
Q. By the way, would you tell the Ladies and Gentlemen of the Jury why on the 16th of March of 1988, after leaving Tina on the side of the road, you left two-year-old, who you say is your son, Jimmy, locked in an abandoned house in Georgia, naked in 30 degree weather? *1199 Defense counsel lodged a timely objection, which the trial court overruled.[4] During closing argument, the prosecutor again referred to the kidnapping and abandonment of the child as one of the reasons the jury should disbelieve Gore's testimony.
We begin our analysis with the basic proposition that in order to be admissible, evidence must be relevant. See § 90.402, Fla. Stat. (1995). Relevant evidence is defined as evidence "tending to prove or disprove a material fact." Id. § 90.401. However, the admission of relevant evidence is restricted by the mandate of section 90.403, Florida Statutes (1995), which provides that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice." Section 90.403 compels the trial court to engage in this balancing test. See Steverson v. State, 695 So.2d 687, 688 (Fla.1997).
In its pretrial ruling, the trial court properly precluded the State from introducing evidence concerning Gore's kidnapping and abandonment of Corolis's son. We are initially concerned with the State's blatant disregard of the trial court's specific pretrial ruling. "The foundation of our legal system depends on fidelity to rules." Halsell v. State, 672 So.2d 869, 870 (Fla. 3d DCA 1996). If, as the State urges here, the prosecutor genuinely believed that Gore had opened the door to this inquiry by his testimony on direct examination, see generally Bozeman v. State, 698 So.2d 629 (Fla. 4th DCA 1997), the proper method of proceeding would have been to first inquire of the trial court whether it would modify its earlier ruling, thus giving defense counsel an opportunity to respond fully. In this case, the "cat" was already "out of the bag," and the damaging statement made, before defense counsel could interpose the objection.
The State maintains that its cross-examination on this subject was nonetheless proper for two reasons: (1) to impeach Gore's credibility; and (2) because the inquiry was within the scope of Gore's testimony on direct. Even if the cross-examination constituted potential impeachment or was within the scope of direct, the evidence must still pass the balancing test of section 90.403 to be admissible. In this case, the prosecution was permitted to introduce evidence of Gore's attempted murder of Corolis only for the limited purpose of establishing Gore's identity as Novick's murderer, and then only with a cautionary instruction to the jury limiting the scope of its consideration of this evidence.[5] Neither the issue of Gore's paternity of the child nor Gore's conduct toward the child after attacking Corolis was relevant to establish the similarity of the collateral crime involving the attempted murder of Tina Corolis. See Czubak v. State, 570 So.2d 925, 928 (Fla.1990); Witherspoon v. State, 645 So.2d 146, 147 (Fla. 3d DCA 1994).
The improper admission of collateral crimes evidence is "presumed harmful" because the jury might consider the bad character thus demonstrated as evidence of guilt of the crime charged. Czubak, 570 So.2d at 928. Undoubtedly, this questioning of Gore was highly prejudicial in that it involved Gore's reprehensible action of leaving a two-year-old child naked in a burned and abandoned house in thirty-degree weather. Assuming that the State's intent was to impeach Gore's statement that he was the child's father, Gore's conduct towards the child does not necessarily disprove paternity, and there were other less prejudicial means to contradict Gore's representation that he was the child's father. It is likely that the jury considered this evidence to establish Gore's bad character, and not solely as impeachment of his statement concerning the *1200 child's paternity. Any probative value of this inquiry was marginal and clearly outweighed by the tremendous prejudice resulting from the jury hearing of these despicable actions. See Sexton v. State, 697 So.2d 833, 837-38 (Fla.1997).

B. Other Collateral Crimes
On three separate occasions during cross-examination, the prosecutor questioned Gore as to whether he had sex with a thirteen-year-old girl. However, the State failed to file a notice of intent to introduce any collateral crimes evidence involving the thirteen-year-old, nor otherwise sought the trail court's permission to question Gore regarding this crime. Nonetheless, the trial court overruled defense counsel's timely objections to these questions. These questions had no relevance in this trial other than to prove that Gore was a morally reprehensible individual. Because the sole relevance of this evidence could only be to demonstrate Gore's bad character, it was inadmissible. See Czubak, 570 So.2d at 928.
In addition, during Gore's cross-examination the prosecutor asked questions about another female, Maria Dominguez. While the State argues that the questions asked concerning Dominguez were themselves innocuous, the State makes no pretense of explaining why the questions were asked in the first place. These questions could only serve to suggest to the jury Gore's involvement in yet another collateral crime against a female victim, close in time to the crime charged. This aspect of the State's cross-examination impermissibly placed before the jury presumptively prejudicial collateral crime evidence without an appropriate predicate for its admissibility having been established. Like the questioning concerning the collateral crime of sex with a thirteen-year-old girl, this questioning could only demonstrate Gore's bad character or propensity to commit crime, and was thus improper. See id.

III. ENTREATY TO CONVICT IF JURY DISBELIEVED GORE
In addition to the improprieties concerning collateral crime evidence, the prosecutor twice exhorted the jurors during closing argument to convict Gore if they disbelieved his testimony:
You see, when I started with you I told you I have the burden of proof and I always have the burden of proof. But you see, now you consider all the evidence presented to you and decide whether I met not just the evidence I presented, but the evidence they presented, you see, because I'll make it really simple for you: If you believe he did not tell you the truth, that he made up a story, that's it, he's guilty of First Degree Murder
....
You know, instead of standing up here for the next however much time I have left, 25 minutes, and just talking about ridiculous statements which I don't want to anymore, okay, we've all listened to everything, I can't, I can't give you anything else that you haven't heard. I can't make this anymore simpler than it is, because that's what it is. It's simple and it comes down to this in simplicity: If you believe his story, he's not guilty. If you believe he's lying to you, he's guilty. It's that simple.

Defense counsel timely objected to these arguments, but each time his objections were overruled. This was error. While wide latitude is permitted in closing argument, see Breedlove v. State, 413 So.2d 1, 8 (Fla.1982), this latitude does not extend to permit improper argument. Here, the prosecutor's closing argument enunciated an erroneous and misleading statement of the State's burden of proof because it improperly asked the jury to determine whether Gore was lying as the sole test for determining the issue of his guilt.
The standard for a criminal conviction is not which side is more believable, but whether, taking all the evidence into consideration, the State has proven every essential element of the crime beyond a reasonable doubt. For that reason, it is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt. See Northard v. State, *1201 675 So.2d 652, 653 (Fla. 4th DCA), review denied, 680 So.2d 424 (Fla.1996); Clewis v. State, 605 So.2d 974, 974 (Fla. 3d DCA 1992); Bass v. State, 547 So.2d 680, 682 (Fla. 1st DCA 1989). Here, the prosecutor's statement, "[i]f you believe he's lying to you, he's guilty," was nothing more than an exhortation to the jury to convict Gore if it found he did not tell the truth. Thus, it was a clearly impermissible argument. See Bass, 547 So.2d at 682; cf. Craig v. State, 510 So.2d 857, 865 (Fla.1987).

IV. PERSONAL ATTACKS ON GORE
At some point in this trial, the prosecutor allowed his animosity towards Gore to overcome his professional judgment and responsibilities. Apparently because the same prosecutor had previously been involved in prosecuting him, Gore "questioned" the prosecutor as to whether the prosecutor had a vendetta against him, and why the prosecutor continued to prosecute cases against him. The prosecutor responded:
Because I don't like people who kill women. How's that? You want to know why? Because I don't like people preying on women.
Later in the cross-examination, Gore challenged the prosecutor to take the stand, to which the prosecutor responded:

I didn't kill three women, you did.[[6]] You see, Mr. Gore, you killed women. That's why you're on the stand.

A. And you're trying to kill me.
Q. I didn't kill anyone.
A. But you're trying to kill me.
Q. Well, you know what, you're right, I am, because somebody who does what you do deserves to die.

Clearly, it was improper for the prosecutor to express his personal belief about Gore's guilt. See Conley v. State, 592 So.2d 723, 731 (Fla. 1st DCA 1992), reversed on other grounds, 620 So.2d 180 (Fla.1993); see also Conley v. State, 620 So.2d 180, 184 n. 7 (Fla.1993). To be sure, Gore himself was antagonistic during the questioning, but the conduct on the part of the defendant should not have given rise to this "tit-for-tat" exchange between prosecutor and defendant.
During closing argument the prosecutor argued to the jury:
You know, Ladies and Gentlemen, there's a lot of rules and procedures that I have to follow in court, and there's a lot of things I can say or can't say, but there's one thing the Judge can't ever make me say and that is he can never make me say that's a human being.

It is clearly improper for the prosecutor to engage in vituperative or pejorative characterizations of a defendant or witness. See Reaves v. State, 639 So.2d 1, 5 (Fla.1994); Goddard v. State, 143 Fla. 28, 36-37, 196 So. 596, 600 (1940); Johnson v. State, 88 Fla. 461, 463-64, 102 So. 549, 550 (1924); Pacifico v. State, 642 So.2d 1178, 1182-83 (Fla. 1st DCA 1994).
Goaded by Gore, the prosecutor abandoned any semblance of professionalism and engaged in needless sarcasm. By way of example, when Gore claimed everyone was out to get him because he was Jewish the prosecutor remarked:
Q. Oh, Gore is a Jewish name? What did you have for Passover, a bunch of Matzo this year?
This exchange prompted defense counsel to object that the prosecutor was badgering Gore and that the two were behaving "like two juveniles." Another instance of the prosecutor's needless sarcasm occurred when, in response to Gore's claim of having held several occupations, the prosecutor asked:
Q. So you were also a dancer? Were you a cook? How about a bottle washer?
A. I have been a cook.
Q. Candle maker? No? Nothing like that?
Comments such as these demonstrate that this prosecutor lost sight of his professional responsibility.

*1202 V. PROFESSIONAL RESPONSIBILITY
The conduct of the prosecutor was antithetical to his responsibilities as an officer of the court. As this Court stated nearly fifty years ago:
Under our system of jurisprudence, prosecuting officers are clothed with quasi judicial powers and it is consonant with the oath they take to conduct a fair and impartial trial. The trial of one charged with crime is the last place to parade prejudicial emotions or exhibit punitive or vindictive exhibitions of temperament.
Stewart v. State, 51 So.2d 494, 495 (Fla.1951). While prosecutors should be encouraged to prosecute cases with earnestness and vigor, they should not be at liberty to strike "foul blows." See Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). As the United States Supreme Court observed over sixty years ago, "It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Id.
We can appreciate from our review of the record that Gore was a most difficult defendant and source of frustration to both the trial court and the prosecutor. However, that frustration cannot justify the prosecutor's behavior. We expect prosecutors, as representatives of the State, to refrain from inflammatory and abusive argument, maintain their objectivity, and behave in a professional manner. See, e.g., Urbin v. State, 714 So.2d 411, 418-22 (Fla.1998); Garron v. State, 528 So.2d 353, 359 (Fla.1988); Adams v. State, 192 So.2d 762, 764-65 (Fla.1966); see also Campbell v. State, 679 So.2d 720, 725 (Fla.1996); Nowitzke v. State, 572 So.2d 1346, 1356 (Fla.1990); Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985).
This case is one more unfortunate demonstration that "there are [still] some [prosecutors] who would ignore our warnings concerning the need for exemplary professional and ethical conduct in the courtroom." Urbin, 714 So.2d at 422. As we did in Garcia v. State, 622 So.2d 1325, 1331-32 (Fla.1993), Campbell, 679 So.2d at 725, Nowitzke, 572 So.2d at 1356, and Garron, 528 So.2d at 359, we once again repeat our admonition in Bertolotti, 476 So.2d at 133:
[W]e are deeply disturbed as a Court by continuing violations of prosecutorial duty, propriety and restraint. We have recently addressed incidents of prosecutorial misconduct in several death penalty cases.... It ill becomes those who represent the state in the application of its lawful penalties to themselves ignore the precepts of their profession and their office.
See also Jackson v. State, 498 So.2d 406 (Fla.1986); State v. DiGuilio, 491 So.2d 1129 (Fla.1986); State v. Marshall, 476 So.2d 150 (Fla.1985).
The prosecutor in this case exceeded the bounds of proper conduct and professionalism and provided a "textbook" example of overzealous advocacy. This type of excess is especially egregious in this, a death case, where both the prosecutors and courts are charged with an extra obligation to ensure that the trial is fundamentally fair in all respects.
We further note that the trial court has a crucial role in ensuring that lawyers do not exceed the bounds of proper advocacy. As we stated in Bertolotti, "[W]e [again] commend to trial judges the vigilant exercise of their responsibility to insure a fair trial." 476 So.2d at 134.

VI. CONCLUSION
In considering reversal, we must look to the totality of the improper questions and comments by the prosecutor during his cross-examination of Gore and during closing argument. See, e.g., Campbell, 679 So.2d at 724; Amos v. State, 618 So.2d 157, 163 (Fla. 1993). In this case, defense counsel objected to most of the prosecutor's improper comments and questions. The most significant improprieties concerned the improper admission of collateral crime evidence, which is presumptively prejudicial. We cannot conclude beyond a reasonable doubt that, collectively, these errors were harmless and did not affect the verdict, especially since there was no physical evidence directly linking *1203 Gore to the murder, Gore did not confess, and the State's case was circumstantial. See DiGuilio, 491 So.2d at 1139; see also Campbell, 679 So.2d at 724-25; Amos, 618 So.2d at 163.
Due process requires that fundamental fairness be observed in each case for each defendant. Our system of justice depends on this basic precept. In this case the prosecutor's "over zealousness in prosecuting the State's cause worked against justice, rather than for it." Ryan v. State, 457 So.2d 1084, 1091 (Fla. 4th DCA 1984).
Accordingly, for the reasons stated in this opinion, we reverse and remand for a new trial.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] We hasten to point out that the assistant attorney general who represented the State on appeal, Barbara Yates, was not the prosecutor who tried this case. We commend Ms. Yates for her professional conduct in the handling of this appeal.
[2] Susan Roark was last seen alive on January 30, 1988. Robyn Novick (the victim involved in this appeal) was last seen alive on March 11, 1988. Gore attacked and left Tina Corolis for dead on March 14, 1988, three days after the disappearance of Novick. Gore was tried and convicted first for the attempted murder of Corolis, and then for the murder of Roark.
[3] Williams v. State, 110 So.2d 654 (Fla.1959).
[4] While not determinative to our decision, we note that the pretrial ruling was made by a different judge than the judge who presided at trial.
[5] The trial court gave the following cautionary instruction derived from the Florida Standard Jury Instructions:

[T]he evidence you're about to receive concerning evidence of other crimes allegedly committed by the Defendant will be considered by you for the limited purpose of proving motive and identity on the part of the Defendant, and you should consider it only as it relates to those issues. However, the Defendant is not on trial for a crime that is not included in this Indictment.
See Fla. Std. Jury Instr. (Crim.) 66.
[6] Besides being highly improper, this comment by the prosecutor was also misleading. There was no evidence in the record that Gore killed three women.