SCHWARTZ, Chief Judge.
The appellant’s conviction on several counts of child molestation must be reversed for a new trial because the record below is riddled with prejudicial error. We find it necessary to discuss briefly only the most prominent.
I.
First, for what we think and hope is the first and last time in legal history, an assistant state attorney was permitted to be called as a witness in the case and to testify, allegedly as “background,” to her investigation of the case itself, her opinion concerning the defendant’s guilt, her assessment of the victim’s credibility,[1] and that the defendant had *513 committed many other uncharged crimes against the victim.[2] Even an intimation in argument by the prosecutor of any one of these matters is patent reversible error. See, e.g., Ruiz v. State, 743 So.2d 1 (Fla.1999); Gore v. State, 719 So.2d 1197 (Fla.1998); Lewis v. State, 780 So.2d 125 (Fla. 3d DCA 2001); Riley v. State, 560 So.2d 279 (Fla. 3d DCA 1990); Vazquez v. State, 405 So.2d 177 (Fla. 3d DCA 1981), approved in part, quashed in part, 419 So.2d 1088 (Fla.1982). The prejudicial effect of
actual testimony by a prosecutor under oath as to all of them defies the most hyperbolic characterization.
II.
Although, because the victim was over eleven, child hearsay could not be admitted, the trial court permitted the investigating police officer — purportedly again as background or as a means of “understanding the event ... that he in *514 vestigated — to testify extensively as to prior accusations made by the victim against the defendant. This, too was clearly error. See State v. Baird, 572 So.2d 904 (Fla.1990); Claridy v. State, 827 So.2d 1088 (Fla. 1st DCA 2002); Garcia v. State, 659 So.2d 388 (Fla. 2d DCA 1995); Lazarowicz v. State, 561 So.2d 392 (Fla. 3d DCA 1990); Postell v. State, 398 So.2d 851 (Fla. 3d DCA 1981), review denied, 411 So.2d 384 (Fla.1981).
Reversed and remanded.

. Q. And during your meeting with her, all of the allegations in the case came out from her?
A. Yes, they did.
Q. Did they come in generalities or specific details?
A. No. When we do a pre-trial conference, it is different than a statement that a *513 police officer would take or a detective would in the case.
We get into more detail, to find out, actually, what happened, how it happened, where she was in relation to the defendant, and we go into great detail.
Q. Why is it important to get the great detail with the victim in the case like that?
A. That is your opportunity to assess the credibility of the witness you are speaking to, and the more details that they give, you know, the more likely that they are credible.
And we have to know, in order to make a filing decision, exactly what happened, does it meet the element of the crime.
Q. In a case where a victim comes to you and doesn’t give you details, and doesn’t fit with other parts of the investigation, do you oftentimes not file the case?
A. Oh, yes.
[[Image here]]
Q. Did you become aware that an attorney was appointed in the case to represent "AV”, the victim in the case?
A. Yes. And we actually did that, because we knew that if — once we learned that this was her signature, and because of my meeting with her, we had such a great meeting, I knew somebody had gotten to her. So in cases where—

. Q. Ms. Fein, you were the prosecutor that made the charging decisions in this case; is that right?
A. Correct.
Q. And there were a number of assaults that were told to you about — correct?—by "AV”?
A. Yes.
Q. And the assaults started when she was ten years old in 1997 and it continued up until she was 13?
A. Correct.
Q. In the year 2000; is that right?
A. Correct.
Q. And some of these were occurring a couple of times a week, for weeks on end, throughout the year; is that right?
A. That’s right.
Q. I’m holding a copy of the Information in the case that has 16 counts; a number of lewd assault acts and the count of obscene material, protection of minor counts, as well as battery of a child with bodily fluid and false imprisonment.
Do you recall them?
A. Yes.
Q. If you had all of these descriptions given to you of these various assaults throughout this three-year period, why isn't there a much larger charging document?
MR. VAZQUEZ: Judge, I object.
THE COURT: Sustained.
BY MR. WEINTRAUB:
Q. What was your thought process in making a determination as to how to charge this case?
A. Well, we try to charge very conservatively. We don’t want a 600-page Information.
MR. VAZQUEZ: I object.
THE COURT: Overruled.
THE WITNESS: I mean, if she told me three or four times a week, time that by 52 weeks, and we have about at least 200 times a year.
We don't do that. We charge very conservatively. We charge from the dates that the child remembers, because it happened long ago. And we charge from set dates, and we try to be as conservative as possible.