989 So.2d 747 (2008)
Trevor ROBINSON, Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-517.
District Court of Appeal of Florida, Second District.
September 12, 2008.
*748 James Marion Moorman, Public Defender, and Clayton R. Kaeiser, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Katherine Coombs Cline, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Chief Judge.
Trevor Robinson was among a group who gathered at the rented home of Bob "No Job Bob" Wechman one evening to drink alcohol and smoke crack cocaine. Late in the night the bacchanal took a bad turn when Robinson left the house and then returned and attacked one of the guests. At Robinson's resulting trial the critical issue was whether at the time of the attack he was an invited guest or was an uninvited burglar who entered the premises intending to assault one of the occupants. The State convinced the jury that Robinson was an armed burglar and also that he was guilty of assault and possession of paraphernalia.
This appeal challenges only the burglary conviction. It must be set aside because the trial court repeatedly permitted the State to mischaracterize evidence during closing argument and then applied the wrong standard when denying Robinson's motion for a new trial. Therefore, we reverse the conviction and sentence on the burglary charge and remand for a new trial. The remaining convictions are affirmed without further discussion.
Robinson defended against the burglary charge on the ground that he entered the house as Wechman's invitee. See § 810.015(3), Fla. Stat. (2005) (stating that consent is an affirmative defense to burglary). The State's evidence reflected that Robinson had been a guest at the house on previous occasions and on the evening in question he was already there when, a little before midnight, Katherenia Hayes and her boyfriend arrived. Hayes testified that people were drinking and using drugs. At some point, Wechman and Hayes's boyfriend went into another room and talked. The next thing Hayes knew, she and her boyfriend and another partygoer named Derrick Speed were taking Robinson somewhere in a car. She testified:
It was supposed to be taking him someplace. I don't really understand where. It was just to get him out of Bob's. That was the understanding I was under.... It was just to get him out of Bob's.... Because apparently he was getting obnoxious and Bob was wanting him to get out of the house.
During the ride, Hayes quarreled with Robinson over whether he was too impaired to drive. Hayes and the others left Robinson at his home and returned to *749 Wechman's house. Some time later, Speed observed Robinson getting out of a car in the driveway. Hayes panicked, apparently due to the earlier argument, and Speed locked the door. Wechman was present when he did this, but Wechman did not tell him to lock the door. Robinson burst into the room without knocking, breaking the door frame in the process. In their testimony both Hayes and Speed asserted that Robinson kicked the door in, but they did not actually see him do this. Robinson went straight for Hayes and, as Speed described it, "went to whaling on her." Witness accounts differed over whether, in the brief melee that followed, Robinson wielded a tire iron or Hayes sliced Robinson's ear with a knife. In any case, Robinson was quickly corralled and escorted out of the house. When found later by the police, he denied any criminal activity. He admitted that he had been at Wechman's house, but he said that he had been invited.
As can be seen, the question of Robinson's status when he returned to the party turned on conflicting inferences. His defense that he was there at Wechman's invitation was supported by the State's evidence that he had been a guest in the house earlier that evening and on previous occasions, that Robinson told the police he had been invited, and that Wechman made no apparent objection when Robinson returned to the house. On the other hand, Robinson's departure and the forceful manner of his reentry were consistent with the State's theory that Robinson was no longer welcome when he returnedexcept that Wechman himself did not remove Robinson from the premises, nor did he order Robinson locked out.
Indeed, although the State proved that at the time of the attack certain of the revelers no longer wanted Robinson there, the evidence of what the gathering's host intended was thin, to say the least. Wechman, the lessee of the premises, did not testify at trial, and Hayes's testimony on the topic was conjectural. Hayes never testified to hearing Wechman say anything about Robinson. In fact, she never testified that she had personal knowledge of why she and the others were leaving or where they were going. She speculated about her "understanding" of events, based either on her assumptions or on hearsay statements that would not have been admissible. See Torres v. State, 870 So.2d 149, 150 (Fla. 2d DCA 2004) (concluding that evidence was insufficient to support contempt conviction when State's sole witness testified to certain facts he gleaned by putting "two and two together"; even though witness did not repeat inadmissible hearsay, his testimony was not based on facts within his independent knowledge); see also § 90.604, Fla. Stat. (2005) (stating that lay witness "may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter").
Yet, in closing argument the prosecutor described Hayes's testimony very differently. He recounted that "the reason why [Robinson] left is because Mr. Wechman told him to leave. You got that from Ms. Hayes's testimony." Defense counsel immediately objected that the prosecutor was arguing facts not in evidence, but the objection was overruled. The prosecutor continued on this theme: "But you heard her testify Mr. Wechman said, `Get him out of her[e].'" This drew another objection, also overruled. The prosecutor argued that the jury should use its recollection of the testimony and then said: "If you recall correctly when Ms. Hayes was on the stand, she testified Mr. Wechman wanted Mr. Robinson out of the home because he was abusive, if you remember that word that she used." Again an objection *750 was overruled, and the defense motion to strike was denied. Later, in discussing the elements of burglary, the prosecutor contended that "Mr. Robinson entered that home unlawfully. Well, how do you know that? Well, he kicked in the door, the locked door, after he was expelled some 20, 40 minutes, maybe an hour before that when Mr. Wechman told Ms. Hayes, `Hey, get him out of here. He's getting abusive.'" Once more, the trial court overruled the defense objection that the prosecutor was arguing facts not in evidence.
The jury convicted Robinson of armed burglary of a dwelling, simple assault, and possession of paraphernalia. For the burglary conviction, he was sentenced to imprisonment for life as a prison releasee reoffender. Robinson filed a motion for new trial based in part on the prosecutor's misstatement of the evidence in closing argument. The trial court ruled that Robinson had waived that issue because he had not moved for a mistrial when the statements were made.
That reasoning was incorrect for two reasons. First, preservation is a component of appellate review; it is not required when seeking a new trial below. Nigro v. Brady, 731 So.2d 54, 56 (Fla. 4th DCA 1999) ("[T]he preservation rule which applies to raising issues on appeal does not apply to motions for new trial."). Under the applicable rules of procedure, a trial court has broad discretion to grant a new trial, even sua sponte. Id. at 56 (citing Fla. R. Civ. P. 1.530 and Fla. R.Crim. P. 3.580, the rules governing new trials, and concluding that application of appellate doctrine on preservation would be inconsistent with the rules and with the trial court's broad discretion). Despite the absence of a motion for mistrial, the trial court was not precluded from addressing the misstatements complained of in the motion for new trial.
Second, and in any event, to preserve an error founded on an objection at trial, it is necessary to move for a mistrial only when the objection is sustained, not when it is overruled. See Simpson v. State, 418 So.2d 984 (Fla.1982). When objections are overruled, a motion for mistrial would be futile. Id. at 986. Thus, even if preservation had been necessary, the trial court was mistaken in its ruling that Robinson's objections to the prosecutor's mischaracterizations of the evidence were not preserved.
Because the trial court overruled defense counsel's objections, the issue has been preserved for our appellate review. To warrant a reversal in these circumstances, the prosecutor's comments
must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than that it would have otherwise.
Spencer v. State, 645 So.2d 377, 383 (Fla. 1994).
When arguing for a conviction on the burglary charge, the prosecutor misstated Hayes's testimony and relied on it as evidence that "Mr. Wechman told Ms. Hayes, `Hey get him out of here. He's getting abusive.'" This was a false characterization of the testimony when there was no competent evidence to prove that Wechman said any such thing. In the absence of this purported evidence, the State was left only with an inference to be drawn from the fact that Robinson broke the door upon his return. Certainly, this was circumstantial evidence that he entered without consent, but it was hardly of *751 the same force as the ersatz "evidence" argued in closing. The prosecutor's improper argument went directly to the heart of Robinson's defense. We can only conclude that it materially contributed to the conviction such that Robinson was deprived of a fair and impartial trial. Accordingly, we reverse the burglary conviction and sentence, and we remand for a new trial on that charge. The error here did not affect the assault and possession convictions, and they are affirmed.
Affirmed in part, reversed in part, and remanded for new trial on burglary charge.
WHATLEY and DAVIS, JJ., Concur.