WALLIS, J.
Jerry Crew (“Appellant”) appeals his judgment and sentences for second-degree felony murder and robbery, arguing primarily that he is entitled to a new trial because the trial court abused its discretion by denying a request for a special jury instruction on Appellant’s theory of defense to robbery.[1] At trial, Appellant’s theory of defense was that the taking of property was an afterthought and, therefore, a theft, not robbery. On appeal, Appellant secondarily argues that the prosecutor’s improper comments in closing argument were fundamental error and, therefore, require a new trial. We agree on both issues and reverse.[2]
*103 Darshawn Broadwater regularly sold crack cocaine to Appellant. On the morning of April 16, 2011, Broadwater sold drugs to Appellant, who was residing in a motel. After the sale, Broadwater went to an apartment complex where he met two friends, Leroy Gadson and Donnell Ellis, to make a plan to retaliate against Lawrence Kloc, a rival drug dealer who robbed Gadson and Ellis. In the early afternoon, Broadwater called Appellant and said they planned to lure someone into the motel room and beat him up. Shortly thereafter, Broadwater returned to the motel with Gadson and Ellis, who both had firearms. Broadwater gave Appellant crack cocaine three times to convince him to let them use the motel room. Appellant agreed, called Kloc, and told him that Appellant would purchase drugs at the motel. Kloc then arrived with two cohorts, who remained in an SUV while Kloc entered the motel room. Broadwater hid behind the bed. Gadson and Ellis hid in the bathroom. Kloc entered the room, where he was immediately engaged in a fight with Gadson and Ellis. The combatting groups fired shots during the struggle. Ellis ran out of the room, and one of Kloc’s cohorts shot Ellis in the parking lot, killing him. During the struggle, Kloc dropped the drugs in the room. Broadwater testified to collecting and hiding the drugs in a car at the opposite end of the parking lot. He specifically testified that he hid the drugs in anticipation of law enforcement’s arrival and investigation when he said he was “just thinking about getting the place clean before the police get here because [he] didn’t want to go to jail.” The only mention of Appellant’s location during the attack was the State’s suggestion that Appellant hid in the shower.
Broadwater provided conflicting testimony about whether Appellant knew that the plan to attack Kloc included robbery.[3] Initially, Broadwater testified on direct examination that he, Gadson, and Ellis concealed the true plan to beat up Kloc, which included “going through his pockets.” Broadwater indicated later on direct examination that Appellant knew before the attack occurred of a plan to take Kloc’s property. On cross-examination, Broad-water was impeached with his deposition by defense counsel, who read into evidence Broadwater’s statements that he, Gadson, and Ellis concealed their plan to rob Kloc because Appellant would not have participated. The State never provided evidence that Appellant would “share in the proceeds” of a robbery.
Appellant requested the following special jury instruction — usually referred to as an “afterthought” instruction — for second-degree felony murder and robbery:
If the force or violence is motivated by reason other than to rob Lawrence Kloc, or if the taking of property occurred as an afterthought to the use of force or violence against Lawrence Kloc, the taking does not constitute robbery, but may still constitute theft.[4]
At the charge conference, the State conceded that the standard instruction did *104 not cover the theory of defense and the special instruction was a correct statement of the law and not misleading or confusing. As such, the State and the Appellant argued only about whether evidence in the record supported the special instruction. The trial court ultimately denied Appellant’s request for the special afterthought instruction, finding that — despite the State’s concession at trial — the standard instruction covered the theory of defense.
The trial court instructed the jury on the standard instruction on robbery for the felony-murder charge, in pertinent part, as follows:
Robbery is defined as follows: One, Jerry Crew took U.S. currency and/or illegal narcotics from the person or custody of Lawrence Kloc. Two, force, violence, assault or putting in fear was used in the course of the taking. Three, the property taken was of some value. Four, the taking was with the intent to permanently or temporarily deprive Lawrence Kloc of his right to the property or any benefit from it, appropriate the property of Lawrence Kloc to his own use or to the use of any person not entitled to it.[5]
In closing, the prosecutor argued:[6] For three days, we’ve been in this courtroom and we’ve been listening to Mr. Zimmet’s [7] denials and nonsense about his client’s involvement in a robbery.
[[Image here]]
You see, he just wants to limit his client’s involvement. He doesn’t mind that Jerry Crew was involved in luring somebody to a room....
What Mr. Zimmet is doing is he’s throwing his client under the bus. But he’s throwing his client under the bus for the lowest charge that the law will allow.
There’s nothing to show that Mr. Crew wasn’t there, and that Mr. Crew was not involved in all of this. Those are undeniable facts. And so if Mr. Crew was there and involved, then let’s see how little we can make him involved for. Let’s see how little we can say he actually did.
And so we’ll pick battery, a misdemean- or. We’ll pick a misdemeanor, one of the lowest offenses the law will allow.
[[Image here]]
In just a little while, Mr. Zimmet is going to get up and he’s going to talk about how his client has morals and how his client tried to tell these boys no. Ladies and Gentlemen, there isn’t a moralistic thing about Jerry Crew. Not one. He was fine with all of this. Every bit of it right up until that boy died. And then he knew he’d be responsible.
[[Image here]]
So if he wants to get up here and talk about the morals of his client and he’s okay with a beating but not okay with a robbery, please. Please. Jerry Crew doesn’t have a moralistic thing about him. Not one. Jerry Crew is nothing more than a hopeless old crack addict .... [H]e’s been buying drugs from Darshawn Broadwater since he was 16. Two and three times a day for six years.

*105
This is a moralistic person? This is a person who has a limitation on what’s wrong and what’s right? No. Not at all.

This is a guy who’s looking for a score the only way that he can get it, every way that he can get it. And so, sure, he said no, he said no. They gave him three hits of cocaine. And they offer him an opportunity for more. And so that crackhead, that crackhead was all in.
[[Image here]]
And so when it comes time to pay for what he’s taken, what he’s used for free, take the options of paying or getting more. No, I’m not going to pay. I’ll take some more cocaine. I’ll take all this for free that you’ve given me and I’ll take a little more. Because after all, the deal was they were going to split it. They were all going to share in the proceeds. So he’s going to get free cocaine again.
[[Image here]]
You’re going to stick your neck out to a drug dealer with guns and friends with guns over a battery and you’re not going to get anything from it? Nonsense. That’s ludicrous. If this guy’s in for a penny, he’s in for a pound. Just like Mr. Broadwater says. They were going to split the proceeds.
[[Image here]]
He got high off of ten or 20, little pieces. He’s going to have ten times that in his room again. My God, imagine how high he’s going to be. His little crackhead eyes are going to glow.
[[Image here]]
Jerry Crew, are you going to do this? He agrees to make the calls. He agrees to make the calls and get this going. By the way, Jerry, did we happen to mention to you why we were doing this? Did we happen to tell you why we’re doing it? If we didn’t tell you about it before, did we tell you that this drug dealer just robbed us just a few days prior for $1,200 with the money and drugs? And you can have a share in what we take off of him. It’s like Christmas came early for a crackhead. And even better, Jerry doesn’t even have to participate in the violence. When it goes down, he gets to jump in the shower and wait for the violence to stop. I mean, think about it. You can almost see him in that little fleabag hotel in that filthy little shower. I mean, they started a fire with the three hits that they gave him. The three little bites of his favorite thing in the world. The thing that he bought every day, two and three times a day, for six years. They started a little fire and you can see his little beady crackhead eyes glowing in that shower.
[[Image here]]
And so what is so important? Why all the calls? Unless you’ve got a stake in it. Unless you’re going to get a share in what’s about to happen. Unless your crackhead little brain is fluttering a million miles a second thinking about more of your favorite thing in the world. Favorite.[8]
Mr. Zimmet wants you to believe that his poor, misunderstood client is out in the parking lot doing deep knee bends. Please. Really? You saw his knee in the picture. Deep knee bends?
(Emphasis added). The prosecutor then commented on the defense counsel’s out- *106 of-court questioning and cross-examination of a State witness that suffered a stroke after April 16, 2011, as follows:
And what does this evidence tell us? That this woman who has nothing to gain, who knows none of these people, comes to court and tells you what happens. She gets questioned and questioned and questioned and questioned by three defense attorneys for an hour and a half off scene and here in the courtroom. ... Same thing with the stroke. What a cheap shot. He wants you to think she has a problem with her memory. Her family doesn’t think so. Her friends don’t think so.... The only thing that comes from this is a deviation from her normal life and harassment. She didn’t want to come in here. You saw her.
[[Image here]]
This is a guy who committed a crime because he’s a crackhead, and he was going to get free crack out of it. He didn’t have to get his hands dirty. The other young kids were going to do all the work for him and he was going to share in the proceeds. That’s what the evidence is, folks. There is no evidence to the contrary.
[[Image here]]
And so the evidence in this case is clear. It is crystal clear that these people committed a crime together, that they lured a drug dealer there and they were sharing in the proceeds.
[[Image here]]
Because that’s what we’re talking about here. We’re talking about justice for DJ and we’re talking about letting that man walk. Couldn’t be more clear. Even with this penny-anti [sic] little misdemeanor charge. Misdemeanor. Right. Misdemeanor? The kid’s dead. People were shot. People were robbed. Misdemeanor?
[[Image here]]
Today we’re asking you for justice for DJ.... Hold him accountable for what he’s done. Don’t let him get out of here and make this cheap. Don’t make it cheap. Don’t make it a misdemeanor. You all know what a misdemeanor means.
[[Image here]]
But in just a minute, I’m going to invite Mr. Zimmet to step up. I’m going to invite him to tell you what a good guy, what a moralistic guy that his client is.
(Emphasis added). The prosecutor then began referring to Appellant’s counsel solely by his first name when addressing the jury for the remainder of the closing argument. The prosecutor finished the closing argument by discussing Ellis’ family, as follows:
But if you don’t make it above the line, you don’t even get a choice. The law says those things below the red line do not count, will not qualify....
Anything below that line diminishes this boy’s life. It spits in his family’s face. Says that that man right there had nothing to do with this and it pardons him for his conduct.
And so that’s really why Art [9] wants you to find battery, is because if he knows that if you find that battery, then his client gets to walk out of here without facing any of the facts of what he’s done ...
Don’t diminish this boy’s life. Don’t spit in his family’s face. DJ Ellis was a young man in this community. He meant something. He meant something to his family. He meant something to *107 this community. He died before he had a chance to live his life.
(Emphasis added).
During deliberations, the jury requested Broadwater’s testimony about the conversation in the motel room with Appellant. The trial court instructed the jurors that they must rely on their recollections. The jury returned a guilty verdict for second-degree felony murder and robbery.
I. The trial court erred by denying Appellant’s request for an “afterthought” instruction.
It is well-settled in Florida that “[t]he standard jury instructions are presumed correct and are preferred over special instructions.” Stephens v. State, 787 So.2d 747, 755 (Fla.2001) (citing State v. Bryan, 290 So.2d 482 (Fla.1974)). Thus, an appellant “has the burden of demonstrating that the trial court abused its discretion in giving standard instructions.” Id. at 755-56 (citing Phillips v. State, 476 So.2d 194 (Fla.1985); Williams v. State, 437 So.2d 133 (Fla.1983)). Florida case law narrows a trial judge’s discretion in a criminal trial “because a criminal defendant is entitled to have the jury instructed on his or her theory of defense, if there is any evidence to support this theory, and so long as the theory is recognized as valid under the law of the state.” Davis, 922 So.2d at 444 (citing Worley v. State, 848 So.2d 491, 492 (Fla. 5th DCA 2003)). “To establish entitlement to a special jury instruction, the defendant must prove the following three factors: (1) the special instruction correctly states the law and is not confusing or misleading, (2) the standard instruction is not adequate to explain the theory of defense, and (3) there is evidence supporting the special jury instruction.” DeJesus v. State, 98 So.3d 105, 107 (Fla. 2d DCA 2012) (citing Wheeler v. State, 4 So.3d 599, 605 (Fla.2009)).
First, the State correctly conceded at trial that the afterthought instruction, which was nearly identical to the instruction in Davis, correctly stated the law and was not misleading. See Davis, 922 So.2d at 443-44; see also DeJesus, 98 So.3d at 107-08 (holding that the trial court abused its discretion when it failed to give defendant’s requested afterthought instruction for a robbery charge when DeJesus’ girlfriend “went though [sic] the seemingly unconscious victim’s pockets on her own initiative”). Second, this court has consistently held that the standard instruction does not adequately explain the afterthought theory of defense. Davis, 922 So.2d at 443; Concepcion v. State, 938 So.2d 559 (Fla. 5th DCA 2006). Third, we hold that the evidence at trial supported Appellant’s theory of defense, justifying the special instruction.
Specifically, Broadwater’s testimony, although conflicting, supported the defense that the taking was an afterthought, which if believed by a jury, would have resulted in convictions for battery and theft, not robbery.[10] Broadwater provided inconsistent trial testimony concerning whether the plan to rob Kloc was concealed from Appellant. One version of Broadwater’s testimony supported Appellant’s defense that he was not aware of the plan to rob Kloc, which entitled Appellant to the special afterthought instruction. We therefore reverse on this issue and remand for a new trial.
II. The cumulative effect of the prosecutor’s misconduct in closing argument was fundamental error.
In Servís v. State, 855 So.2d 1190, 1193 (Fla. 5th DCA 2003), this court *108 recently discussed the appropriate standard of review for fundamental error in closing argument when a defendant did not object to some comments and objected generally to others, as follows:
Because [the defendant] did not object to some of the comments about which he appeals, and because other objections were general, we must determine whether the comments were so prejudicial as to constitute fundamental error. Freeman v. State, 717 So.2d 105 (Fla. 5th DCA 1998); Caraballo v. State, 762 So.2d 542, 548, n. 18 (Fla. 5th DCA 2000). “Fundamental error in closing arguments occurs when the prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury.” Silva v. Nightingale, 619 So.2d 4, 5 (Fla. 5th DCA 1993).
Furthermore, our supreme court stated that when reviewing prosecutorial misconduct, it “considers the cumulative effect of objected-to and unobjected-to comments when reviewing whether a defendant received a fair trial.” Merck v. State, 975 So.2d 1054, 1061 (Fla.2007) (citing Brooks v. State, 762 So.2d 879, 898-99 (Fla.2000)).
“A criminal trial is a neutral arena wherein both sides place evidence for the jury’s consideration; the role of counsel in closing argument is to assist the jury in analyzing that evidence, not to obscure the jury’s view with personal opinion, emotion, and nonrecord evidence.” Ruiz v. State, 743 So.2d 1, 4 (Fla.1999). “The assistance permitted includes counsel’s right to state his contention as to the conclusions that the jury should draw from the evidence.” Id. (quoting United States v. Garza, 608 F.2d 659, 662 (5th Cir.1979)). “While wide latitude is permitted in closing argument, ... this latitude does not extend to permit improper argument.” Gore v. State, 719 So.2d 1197, 1200 (Fla.1998) (citation omitted). The prosecutor’s arguments are best categorized in four areas.
A. The prosecutor misrepresented the evidence.
“Clearly, comments on matters not in evidence are improper.” Merck, 975 So.2d at 1071. Furthermore, misquoting a defendant or implying a defendant said something is a misrepresentation of the evidence. State v. Cutler, 785 So.2d 1288 (Fla. 5th DCA 2001) (reversing conviction, holding that defendant never made statement prosecutor implied during closing argument, and characterizing the statement as “a figment of the prosecutor’s imagination or mis-memory”); Swearingen v. State, 91 So.3d 885 (Fla. 5th DCA 2012) (reversing on other grounds but noting that prosecutor’s statement in closing argument that the “victim told the 911 operator that a bullet “wizzed’ past his head” was a mischaracterization of the evidence when no such statement was made, which the appellate court “will not condone”); Robinson v. State, 989 So.2d 747 (Fla. 2d DCA 2008) (reversing where the prosecutor stated in closing that a witness said “get the [defendant] out of here” because the prosecutor’s statement was a “false characterization of the testimony” and noting that although circumstantial evidence supported the prosecutor’s statement in closing argument, it was “hardly the same force as the ersatz ‘evidence’ argued in closing”).
Here, the central issue for whether Appellant was guilty of robbery is if he knew about the plan in advance. The prosecutor clearly and continuously misrepresented the conversation between Broadwater and Appellant by arguing in closing that Appellant would “share in the proceeds” of a robbery. The prosecutor also falsely at *109 tributed the statement to Broadwater by arguing, “Just like Mr. Broadwater says. They were going to split the proceeds.” No evidence exists in the record to suggest Broadwater, Ellis, and Gadson would be sharing the proceeds with Appellant. Contrary to the prosecutor’s statement, Broadwater never testified that they were going to share in the proceeds. The entire argument is, as this court has previously stated, “a figment of the prosecutor’s imagination or mis-memory.” Cutler, 785 So.2d at 1289. On this point alone, this court would likely have reversed had the entire issue been preserved with contemporaneous objections and motions for mistrial. Still, when this error is considered with the following instances of misconduct, the combined errors are fundamental.
B. The prosecutor engaged in demeaning and ridiculing personal attacks on the Appellant.
“It is improper for a prosecutor to refer to the accused in derogatory terms, in such manner as to place the character of the accused in issue.” Pacifico v. State, 642 So.2d 1178, 1183 (Fla. 1st DCA 1994) (citing Lewis v. State, 377 So.2d 640 (Fla.1979); Donaldson v. State, 369 So.2d 691 (Fla. 1st DCA 1979)); Gore, 719 So.2d at 1201 (“It is clearly improper for the prosecutor to engage in vituperative or pejorative characterizations of a defendant or witness.” (citations omitted)); Ruiz v. State, 743 So.2d 1, 9 (Fla.1999) (finding the prosecutor’s statement that “if that guy were Pinocchio, his nose would be so big none of us would be able to fit in this courtroom” as inappropriate).
As in Gore, “the prosecutor abandoned any semblance of professionalism and engaged in needless sarcasm.” 719 So.2d at 1201 (finding prosecutor’s remarks during closing — “but there’s one thing the Judge can’t ever make me say and that is he can never make me say that’s a human being” — inappropriate because “vituperative or pejorative characterizations of a defendant” are “clearly improper”). Here, the State degraded Appellant by repeatedly asserting “there isn’t a moralistic thing” about Appellant and calling him a drug addict in various permutations like “nothing more than a hopeless old crack addict,” a “crackhead,” “our favorite crackhead,” “little beady crackhead eyes,” and “crackhead little brain.” In summation, the prosecutor continued, “This is a guy who committed a crime because he’s a crackhead and he was going to get free crack out of it.” These are the vituperative or pejorative characterizations of a defendant that are clearly improper.
C. The prosecutor engaged in demeaning personal attacks on defense counsel and disparaged his theory of defense.
“Verbal attacks on the personal integrity of opposing counsel are inconsistent with the prosecutor’s role and are unprofessional.” Merck, 975 So.2d at 1070 (finding that prosecutor’s statements that defense counsel instigated defendant to read science and literature while imprisoned as a mitigation strategy were disparaging). “A prosecutor may not ridicule a defendant or his theory of defense.” Servis, 855 So.2d at 1194 (citation omitted) (emphasizing as improper statements like “the second tragedy in this case is the defense doing all they can to throw whatever they can against the wall and see what sticks” and repeated iterations of “the defense wants you to believe”). The prohibition against disparaging defense counsel includes comments about cross-examinations of witnesses. Fuller v. State, 540 So.2d 182, 185 (Fla. 5th DCA 1989) (noting “it [was] improper to personally attack defense counsel for cross-examining the child victim”); Chambers v. State, 924 *110 So.2d 975, 978 (Fla. 2d DCA 2006) (“[T]he prosecutor’s expressed indignation at the ... need for her to face questioning by defense counsel as to her credibility was improper.” (citations omitted)); Redish v. State, 525 So.2d 928, 931 (Fla. 1st DCA 1988) (holding the “prosecutor’s personal attack on defense counsel as ‘cheap tricks’ to be clearly beyond the bounds of proper closing argument”); Jackson v. State, 421 So.2d 15, 15 n. 1 (Fla. 3d DCA 1982) (noting that calling opposing counsel a “cheap shot artist” is improper).
Here, at the beginning of closing argument, the prosecutor provided that “[f]or three days, we’ve been in this courtroom and we’ve been listening to Mr. Zimmet’s denials and nonsense about his client’s involvement in a robbery.” The prosecutor repeatedly referenced the defense attorney not minding Appellant’s actions, “throwing his client under the bus,” disparaging the defense attorney’s choice of the “lowest offense the law will allow,” and sarcastically saying “Mr. Zimmet wants you to believe that his poor, misunderstood client....”
The prosecutor’s comments about the defense counsel’s out-of-court questioning of a witness who suffered a stroke was inappropriate, as well. The prosecutor’s argument that “[s]he gets questioned and questioned and questioned and questioned by three defense attorneys for an hour and a half off scene and here in the courtroom” and referring to cross-examination as a “cheap shot” violates established case law. The prosecutor needlessly referred to the defense attorney’s closing argument with sarcasm when he said, “I’m going to invite Mr. Zimmet to step up” and “tell you what a good guy, what a moralistic guy that his client is.” Finally, the prosecutor’s references to defense counsel by first name only was denigrating in light of the sarcastic argument on the theory of defense.
D. The prosecutor urged the jury to consider improper grounds to find Appellant guilty.
A prosecutor’s “request that the jury show sympathy for the victim ... is clearly improper.” Johns v. State, 832 So.2d 959, 962 (Fla. 2d DCA 2002) (citing Thomas v. State, 787 So.2d 27, 30 (Fla. 2d DCA 2001); Brown v. State, 593 So.2d 1210, 1211-12 (Fla. 2d DCA 1992)). “[D]uring closing arguments a prosecuting attorney should not attempt to elicit the jury’s sympathy by referring to the victim’s family.” Johnson v. State, 442 So.2d 185, 188 (Fla.1983) (citations omitted). Furthermore, asking for justice for the victim’s family is improper. Edwards v. State, 428 So.2d 357, 359 (Fla. 3d DCA 1983) (holding that the prosecutor’s argument was an improper appeal to the jury for sympathy for the victim’s family where the prosecutor said, “I ask you for justice both on behalf of myself and the people of the State of Florida, also on behalf of [victim’s] wife and children”). Similarly, implying the jury should not let a defendant walk out can carry improper implications. See Pacifico, 642 So.2d at 1182-83 (finding statements like “does he walk out of this courtroom today laughing, or do you make him take responsibility for what he did to [the victim] that night” constitute an implicit instruction to the jurors that it is their duty to society to find a defendant guilty).
Here, the prosecutor urged each of the types of improper grounds, when he said “we’re talking about letting that man walk,” “[d]on’t let him get out of here and make this cheap,” and “you all know what a misdemeanor means.” The prosecutor further told the jury that by convicting Appellant of a lesser-included charge, it would be allowing a lower sentence, because the “client gets to walk out of here *111 without facing any of the facts of what he’s done.” Finally, at the end of the prosecutor’s rebuttal closing, he made an improper appeal to emotion by asking the jury to convict for the victim’s family, by repeatedly saying that convicting Appellant of a lesser-included charge “spits in his family’s face.” By using the imperative mood when he said, “Don’t spit in his family’s face,” the prosecutor improperly implied that it would be the jury spitting in the victim’s family’s face.
E. The cumulative effect of the prosecutor’s arguments is fundamental error.
The cumulative effect of the prosecutor’s comments, which as seen above are well-documented errors, denied Appellant a fair trial. Pacifico, 642 So.2d at 1182-83 (finding the cumulative effect of prosecutorial improprieties as fundamental error); Ser-vís, 855 So.2d at 1197 (same). As such, we also reverse and remand for a new trial based on the prosecutor’s misconduct.
REVERSED and REMANDED for NEW TRIAL.
LAMBERT, J., concurs.
BERGER, J., concurs, with opinion.

. The State charged Appellant with: (1) second-degree felony murder (firearm) in violation of sections 782.04(3) and 777.011, Florida Statutes (2011); (2) robbery with a deadly weapon in violation of sections 812.13(2)(a) and 777.011, Florida Statutes (2011); and (3) tampering with physical evidence in violation of section 918.13, Florida Statutes (2011). The jury found Appellant guilty of the first and second charges and not guilty of the third.

. Appellant raises other meritorious issues, which we do not address because they are moot as the result of the reversal.

. At trial, only Broadwater testified about the conversations with Appellant before Kloc arrived. Neither Appellant nor Gadson testified.

. In a pretrial motion, Appellant requested the special instruction, which tracked the language we approved in Davis v. State, 922 So.2d 438, 443 (Fla. 5th DCA 2006). There, this court reversed and remanded for a new trial after the trial court denied a request for an afterthought instruction. The requested instruction provided: "If the evidence shows that the taking of property occurred as an afterthought to the use of force or violence which resulted in the death of the victim, the taking does not constitute robbery, but may still constitute theft.” Id.

. The trial court instructed the jury on the same instruction for robbery when reading the instructions for the robbery charge.

. The prosecutor made numerous statements that violated Appellant’s right to a fair trial. The transcript of the closing argument is replete with egregious statements. For us to identify each would require us to provide the entire transcript, which we decline to do. Accordingly, we include only those statements we wish to discuss.

.Appellant’s trial counsel.

. The prosecutor continued with multiple references to Appellant as “our favorite crackhead.”

. Appellant’s trial counsel.

. The absence of the robbery conviction, which was the condition-precedent felony, would have foreclosed a felony-murder conviction.