Kuntz, J.
The Defendant appeals his conviction and sentence of life imprisonment, a sentence imposed after he was found guilty on one count of carjacking with a firearm, three counts of robbery with a firearm, and a fifth count of possession of a firearm by a convicted felon.
He raises three issues on appeal, and we affirm without further discussion as to the *646 first two. As for the third issue, we affirm, and write to distinguish the State’s comments during closing in this case, which are discussed below, from the comments made in the three cases upon which the Defendant relies. See Ruiz v. State, 743 So.2d 1 (Fla. 1999), Gore v. State, 719 So.2d 1197 (Fla. 1998), and Crew v. State, 146 So.3d 101 (Fla. 5th DCA 2014).
The Defendant challenges multiple comments the State made during its closing argument, arguing the court abused its discretion in overruling his objections to each. These statements include argument by the State that to accept the Defendant’s theory, you had to conclude that the officer “not only got all of that wrong, but so did the victims,” that the officer “was completely wrong in his entire testimony of this case,” and that the officer “completely made up his turn of events.” The State also noted during its closing argument that the Defendant is a “three-time convicted felon who’s also been convicted of lying, giving a false statement.” Finally, the State argued to the jury “that [this crime] was committed by someone who thinks that they can get away with anything.”
We find the comments in this case distinguishable from the comments made in the cases relied on by the Defendant.
In Ruiz, the prosecutor equated the defendant to Pinocchio. See 743 So.2d at 5. Later, during sentencing, she gave personal stories of her father, a physician and commander in the military during Operation Desert Storm, who was dying of brain cancer. Id, She equated her father’s “duty” to serve despite the hardships of dying of cancer'with that of the “duty” imposed on jurors to sentence defendant to “the ultimate sentence.” Id. at 6-7. Our supreme court found these comments “crossed the line of acceptable advocacy by a wide margin,” and stated:
This blatant appeal to jurors’ emotions was improper for a number of reasons: it personalized the prosecutor in the eyes of the jury and gained sympathy for the prosecutor and her family; it contrasted the defendant (who at that point had been convicted of murder) unfavorably with [the prosecutor’s] heroic and dutiful father; it put before the jury new evidence highly favorable to the prosecutor; it exempted this new evidence from admissibility requirements and from the crucible of-eross-examinar tion; and most important, it equated [the prosecutor’s] father’s noble sacrifice for his country with the jury’s moral duty to sentence [the defendant] to death.
Id. at 7, 9.
Similarly, in Gore, our supreme court classified the prosecutor’s behavior as “antithetical to his responsibilities as an officer of the court.” 719 So.2d at 1202. During cross-examination, the prosecutor stated on the record that “you know what, you’re right, I am [trying to kill you], because somebody who does what you do deserves to die." Id. at 1201 (emphasis supplied). The prosecutor also was described as engaging in “needless sarcasm” and remarked “Oh, Gore is a Jewish name? What did you have for Passover, a bunch of Matzo this year?" Id. (emphasis in original). Later, during closing argument, the prosecutor told the jury that “there’s a lot of things I can say or can’t say, but there’s one thing the Judge can’t ever make me say and that is he can never make me say that’s [the defendant ⅛] a human being.” Id. (emphasis added).
Crew also contains comments far more egregious than the comments during closing argument in this case. The comments in Crew include: “There isn’t a moralistic thing about the defendant. Not one.... Please. The defendant doesn’t- have a mor *647 alistic thing about him. Not one.... The defendant is nothing more than a hopeless old crack addict ....” Crew, 146 So.3d at 104-05, Later, the prosecutor stated that “this is a person who has a limitation on what’s wrong and what’s right? No. Not at all.” Id. In lieu of referring to the defendant by his name or defendant, the prosecutor used a different term, “crackhead,” stating: “[A]nd so that crackhead, that crackhead was all in .... [He] got high off of ten or 20, little pieces. He’s going to have ten times that in his room again. My God, imagine how high he’s going to be. His little crackhead eyes are going to glow.” Id. at 105.
Here, to the extent the Defendant challenges the State’s reference to his prior conviction, the Defendant himself testified about his prior convictions during this trial. No new facts were introduced during closing as they were in Ruiz. Further, the comments in Ruiz, Gore, and Crew, as described by our supreme court, crossed the line of acceptable advocacy by a wide margin. In this case the prosecutor’s comments were perhaps ill-advised but did not reach that line. Therefore, we affirm the Defendant’s conviction.

Affirmed

May and Klingensmith, JJ., concur.